## Case No. 846.

### BANK OF ALEXANDRIA v. DENEALE.

[2 Cranch, C. C. 488.] [1]

Circuit Court, District of Columbia. May Term, 1824.

NEGOTIABLE INSTRUMENTS—SPECIAL USAGE OF DISCOUNTING BANK.

1. A party to a note discounted at a bank, is not bound by the special and particular usage of such bank, unless upon his agreement, express or implied.

[See Bank of Columbia v. McKenney, Case No. 874.]

2. Upon a prayer for instruction to the jury, the court, in considering the question whether the jury can, from the evidence, infer the facts necessary to justify the instruction prayed, must decide in the same manner as they would upon a demurrer to evidence, and will consider all those facts as proved which the jury could legally infer from the evidence.

3. But upon the question whether the instruction prayed be justified by the facts stated in the prayer, the court is bound to decide upon those principles which ought to govern them in deciding upon a special verdict. The ultimate facts upon which the party relies must be expressly and absolutely stated. The court can infer nothing.

4. If a case cannot be brought within the special usage of the bank, it must be governed by the general law of the land; and by that law the indorser is not liable, unless demand of payment be made upon the maker of the note.

5. By the law-merchant the rights and obligations of the parties to a negotiable bill or note are as precisely ascertained as if they had been expressed in so many words. The obligation of the indorser is an express, not an implied obligation. It is conditional, not absolute. No parol agreement made at the same time with the written agreement, can alter or control its legal import; nor can evidence of such parol agreement be admitted.

6. In a case stated, the court cannot infer any fact as they may upon a demurrer to evidence.

7. An understanding and expectation of the parties, does not, in a special verdict, or case stated, amount to a finding of an agreement.

At law. Assumpsit [by the Bank of Alexandria] against the executrix of the indorser of a promissory note for $4,000, made by one James Deneale by his attorney in fact, the defendant's testator, George Deneale, payable to the said George Deneale and by him indorsed to the plaintiffs, by whom it was discounted, and the proceeds placed to the credit of the maker, James Deneale. [Verdict and judgment for defendant.]

It was dated at Alexandria, on the 16th of June, 1818, and payable sixty days after date. No place of payment was stated in the note. James Deneale, the maker of the note, resided at Dumfries in Virginia, about twenty-five miles from Alexandria, and had

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

never resided in Alexandria. George Deneale, who was his brother, resided in Alexandria. On the 18th of August, 1818, (being the 3d day of grace,) the notary employed by the bank, put a letter into the post-office at Alexandria directed to the said James Deneale at Dumfries, informing him that the note was due. George Deneale died on or about the 2d of July, 1818, before the note became payable. Notice of non-payment of the note was given to the defendant, his executrix, on the 19th of August, 1818. On the trial, the plaintiffs offered evidence that the bank did not demand payment from the makers of promissory notes, discounted by the bank, if the makers resided out of the town, and not in any town where a bank was established. That when a note is not paid by three o'clock on the last day of grace, it is delivered to a notary public, who, if the maker lives out of town, states that fact in his protest, and gives notice to the indorser, and returns the protest to the bank; and that this practice of the notary, and of the bank, was generally known to the dealers in the Bank of Alexandria. That some of the preceding notes of the same series had been protested in the same manner, and judgments had been confessed by the said James Deneale as maker, and by George Deneale as indorser; and that new notes had been given for the judgments. The power of attorney from James Deneale to George authorized him to sign notes for him to be negotiated in the Bank of Alexandria, and to renew the same from time to time.

Mr. Taylor, for the plaintiffs, prayed the court, in effect, to instruct the jury that if they should believe, from the said evidence, that it was the known and established usage of the banks in Alexandria to make no demand of payment on non-resident drawers of notes discounted in those banks, but to call upon and give notice to the resident indorsers of such notes; and that the note in question was indorsed by the said George Deneale with the understanding and expectation that if not duly paid by the maker, it was to be sent out from the bank to the notary and by him proceeded with conformably to the said usage, and in all respects as it was treated; and with the understanding and expectation that no further or other steps of diligence were, in that case, to be pursued by the bank for making demand of payment of the said note, or giving notice to the indorser of the non-payment of the same, than as aforesaid, then it is not necessary, in order to charge the defendant, as executrix of the said George, in this action, upon his indorsement aforesaid, to prove that any demand of payment of the said note had been made on the said James Deneale.

CRANCH, Chief Judge, delivered the opinion of the court as follows, (THRUSTON, Circuit Judge, absent.) The court refuses to

give the instruction prayed by the plaintiff's counsel.

1st. Because the evidence does not support the hypothesis upon which the instruction is prayed; and

2d. Because the hypothesis, if true, will not justify the instruction.

1. The hypothesis requires a known and established usage of the banks in Alexandria, to make no demand of payment on non-resident drawers of notes discounted in those banks; and a like usage of the banks to call upon and give notice to the resident indorsers of such notes. The evidence is, that it had never been the usage of the banks to demand payment from the non-resident drawers of discounted notes, but "that the universal usage of the banks was to deliver such notes to the notary public, on the day they fell due; if not paid in banking hours, without any special instructions or directions to the notary, expecting him to do his duty." The bank, then, had no usage on the subject of demand and notice in such cases, but depended upon the notary to do his duty according to law; leaving the responsibility with him, and, no doubt, holding him responsible if he did not. There is no evidence of any usage of the bank to call upon and give notice to the resident indorsers of such notes. Whatever may have been the usage of the notary, it was not the usage of the bank.

2. The hypothesis requires that the note should have been indorsed by George Deneale (the defendant's testator) with the understanding and expectation that if not duly paid by the drawer, it was to be sent out from the bank to the notary, and by him proceeded with conformably to the usage before described, and in all respects as it was treated.

Before the court can give the instruction prayed, they must be satisfied that the jury can, from the evidence stated, infer the facts which constitute the hypothesis upon which the instruction is prayed. That question must be decided in the same manner as the court would decide upon a demurrer to evidence, and the court will consider all those facts as proved which the jury could legally infer from the evidence taken altogether; for, in the present case, according to the prayer, the jury is to believe all the evidence to be true. If, then, from the whole evidence stated, the jury cannot infer that the note was indorsed by the defendant's testator, with the understanding and expectation, that if not duly paid by the drawer it was to be sent out from the bank to the notary and by him proceeded with conformably to the usage stated, and in all respects as it was treated, the court cannot give the instruction.

From an attentive consideration of the evidence as stated, the court is of opinion that the jury cannot legally draw the inference required by the hypothesis. For if the jury should draw the inference that the usage existed and was known to the defendant's tes-

tator at the time of his indorsing the note, yet from the whole evidence as stated, the jury might and ought to infer that the said note was drawn with the understanding and expectation that payment thereof, when due, should be demanded of the said George as the attorney and agent of the said James; and the circumstances which induce the court to think that such is the inference which the jury ought to draw, are the following:

1st. The power of attorney from James Deneale to George Deneale, dated October 13, 1800, lodged in the Bank of Alexandria before the drawing and indorsing of any of the said notes, by which the said George is authorized to draw notes in the name of the said James, negotiable in the Bank of Alexandria, and to draw and renew them from time to time, for the accommodation of the said James.

2d. That the bank notices which are usually sent by the bank, to the makers of discounted notes, informing them of the time when their respective notes would become payable, were, in regard to the previous notes drawn by the said George as attorney of the said James, and discounted by the said bank, sent to the said George; and that the said George, as agent and attorney of the said James, had usually paid, or provided the means of retiring the same.

3d. That whenever any of the preceding notes were protested, (and it was only in those cases that a formal demand became necessary; for in all other cases the notes were taken up before the expiration of the last day of grace,) payment thereof was first demanded of the said George, as agent of the said James, the drawer thereof; and that the said George never objected to such demand of payment so made upon him as agent of the said James; but in one instance confessed judgment in an action brought against him as indorser of one of the said preceding notes, of which payment had been demanded of him as agent of the said James as aforesaid, and paid, or provided the means of retiring the others.

4th. That evidence was given that it was the invariable custom of the notary in all cases of notes discounted in the banks in Alexandria, to give notice on the last day of grace to the non-resident drawer by the mail of that day if the note came to his hands in time for the mail; if not, by the mail of the succeeding day, that such was due, and in his hands for protest; but that, in regard to such of the said preceding notes as had been protested, no such notice was given, because payment had been demanded of the said George as agent of the said James, the drawer thereof. These circumstances and acts of the parties, are all inconsistent with the usage attempted to be proved in cases of non-resident drawers; and there is no evidence of any act done by any of the parties in reference to such usage, except this, that after the said George's death, the notary put a let-

ter into the post-office at Alexandria, on the 18th of August, after the mail of that day for Dumfries had been closed, addressed to James Deneale, (the maker of the note,) at Dumfries, informing him that the note was due, and in his hands for protest. This act may have been done, by the notary, in compliance with the supposed usage, but is no evidence that the note was indorsed in reference to such usage; and if the note was not indorsed in reference to such usage, the hypothesis is not supported, and the instruction cannot be given.

3. The hypothesis further requires that the note should have been indorsed by the defendant's testator, with the understanding and expectation, that no further or other steps of diligence were, in that case, to be pursued by the said bank for making demand of the said note, or giving notice to the indorser of the non-payment of the same, than those stated in the description of the usage. The argument which shows that the jury cannot infer that the note was indorsed in reference to the usage, shows that they cannot infer that it was indorsed with an understanding and expectation that no further steps of diligence should be pursued by the bank. If the note was indorsed with the understanding that payment thereof, when due, should be demanded of George as agent of James (the maker,) then it could not have been indorsed with an understanding that no further or other steps of diligence should be pursued than those stated in the description of the usage, because such demand is not required by the usage. But it has been said that even if the note was indorsed with an understanding that payment should be required of George as agent of James, yet, as, by the death of George (which was the act of God,) it became impossible to demand payment from George, the bank is justified by its usage in not making any demand of payment from the maker of the note. But it is only by the agreement and consent of the parties that the usage of the bank can have any effect; and no agreement is stated in the hypothesis, or in the evidence, that in case of George's death before the note should become payable, demand of payment from the maker should be dispensed with. If the case cannot be brought within the special usage of the bank, it must be governed by the general law of the land; and by that law the indorser is not liable unless demand of payment be made of the maker of the note. The defendant is not bound by the special usage, unless at the time of indorsing the note, her testator agreed to be so bound; and there is no evidence of a special custom, that if it be agreed at the time of indorsing a note, that payment shall be demanded of the agent of the maker, and if the agent should die, before the day of payment, then no demand of payment should be made from the maker himself. For these reasons we think the hypothesis not justified by the evidence.

2. The second reason for refusing to give the instruction is, that it is not justified by the hypothesis. As, in considering the question whether the hypothesis was justified by the evidence, the court was bound to decide according to the principles which ought to govern them in deciding upon a demurrer to evidence, so, in considering the question whether the instruction is justified by the hypothesis, the court is bound to decide upon those principles which ought to govern them in deciding upon a special verdict. The ultimate facts, upon which the party relies, must be expressly and absolutely stated. The court can infer nothing. Nothing can, by inference, be added to the hypothesis. It is a serious question how far the special customs or usages of a bank or banker can limit, extend, or define the obligations and rights of the respective parties to a negotiable instrument which happens to be, or was originally intended to be, discounted by such bank or banker. We put out of the question all those special contracts which are made in reference to any particular trade, where the contracting parties are supposed to know the course and usage of such trade, and to have contracted in reference thereto; and all those contracts upon the face of which there is an ambiguity; and all contracts not negotiable, in which the assignee takes the paper subject to all its equity. This is the case of an instrument negotiable by the statute, or by the law-merchant; and by that law, which is only a branch of the common law, (Carth. 269; 1 Show. 127, 318; 12 Mod. 15; 1 Ld. Raym. 175; 6 Mod. 29; 2 Burrows, 1226, 1228; 3 Burrows, 1667; Hale, Com. Law, 24, 25; 1 Bl. Comm. 7, Christ. Note;) the rights and obligations of the parties are as precisely ascertained as if they had been expressed in so many words, (Farnum v. Fowle, 12 Mass. 92; 13 Mass. 558; Rowe v. Young, 2 Brod. & B. 184, Judge Best's opinion; and Id. 204, Burrough's opinion in the house of lords.) The obligation of the indorser is, that he will pay the money if the maker do not pay it when due, provided it be duly demanded of the maker, and due notice be given to the indorser of such demand and non-payment. It is an express, not an implied contract. It is conditional, not absolute.

We do not know that it has ever yet been decided that the custom or usage of a bank can convert the conditional obligation of an indorser into an absolute obligation; nor do we know that it has yet been adjudged that parol evidence can be received to contradict the legal import of a written contract. The indorsement is a written contract. Its words are "Pay the contents to A. B. or order." The legal import of that contract is perfectly ascertained, and is, as before stated, a conditional obligation to pay the money. Has any case yet gone the length to say, that parol evidence may be given to show that, at the time of the indorsement, the indorser agreed, by parol, that he would be absolutely bound to

pay the money at all events? Our own decision, in the case of Renner v. Bank of Columbia, [Case No. 11,699,] has been pressed upon us, and it comes with tenfold weight since it has been affirmed by the supreme court. at its last term, (February, 1824.) 9 Wheat. [22 U. S.] 581. But in that case, the evidence of the usage of the banks to demand payment of, and protest, notes, and give notice to indorsers on the day after the last day of grace, was received without objection; and the object of the evidence was not to contradict or to vary the terms, or the legal import of the contract, but to ascertain whether due diligence had been used in making the demand, and giving notice of non-payment. What is due diligence, is a question compounded of fact and law. It depends very much upon the distance of the parties, the course of the mail, the usage of the post-office, and of bankers and mercantile men, and many other circumstances, all of which depend upon evidence. No material part of the contract was to be altered or varied by the evidence offered in that case. It was not, as in the present case, to change entirely the nature of the contract, and make that absolute which was only conditional. If the legal import of the contract of the indorser had been written out verbatim, "I will pay this note, if the maker, upon due demand, do not, and I have due notice," would the court have permitted evidence to be given, that, at the time he wrote and signed the contract, he declared, that, notwithstanding the express words which make the contract conditional, he would absolutely pay the money without any condition? A party may waive a condition inserted for his benefit, but this waiver must be a subsequent act. You may then give evidence of it, because such evidence could not contradict the original written contract; but you cannot give evidence that, at the time of executing the instrument, the contract was different from what it imports to be upon its face. No rule of law is better settled than this.

In all the cases which we have seen, in which the usage of banks has been permitted to be given, in evidence, in actions upon negotiable instruments, the object has been to show, and bring home to the defendants the particular usage of the bank in relation to a matter left undecided by the legal import of the contract, and which depended upon usage, namely, the time and mode of the demand and notice necessary to charge the indorser. The law-merchant, as a general law, only requires that the demand and notice should be in reasonable time. What is a reasonable time has not yet been decided by any rule applicable to all cases. What may be reasonable, in some circumstances, may not be reasonable in others; and it is competent for the parties, at the time of making the written contract, to agree, verbally, respecting those matters which are not provided for by that contract. In the cases to which we

allude, the judges have been careful to recognize the rule, that the legal import of a written agreement cannot be contradicted or varied by parol, and say that the admission of the parol evidence offered, does not violate that rule, because it is to prove a parol agreement respecting matters not provided for by the written agreement. In the case of Jones v. Fales, 4 Mass. 251, which is the strongest case cited by the supreme court of the United States, in their opinion, in the case of Renner v. Bank of Columbia, [Case No. 11,699,] the point of law decided was, that, "if the defendant, when he indorsed these notes, agreed that, if the notes should be lodged in any bank in Boston, for collection, and if the bank should, according to its usage, notify the promisor, on the first day of grace, that the notes would be due on the last day of grace, and should request him to make payment, and should, afterwards, on the last day of grace, notify the defendant, the indorser, that the notes were not then paid, that he would be answerable on his indorsement," he was bound by his agreement, and could not require that the demand should be made in any other form, or at any other time.

Here, it will be perceived that the parol agreement was respecting a matter not provided for by the written, namely, the mode and time of the demand. It is intimated, by the court, that the condition of demanding payment of the maker, is a condition implied by law, for the benefit of the indorser. But the condition is no more an implied condition than the obligation of the indorser is an implied obligation; and parol evidence might as well be given to prove that, when he indorsed the note, he denied that he was bound, in any event, to pay the money, as to prove that he waived the condition, which was an original and essential part of the agreement. Mr. C. J. Parsons says, "Evidence of this kind, and for this purpose, is not to establish new law, but to prove that the defendant has waived a condition implied by law for his benefit, and has consented to other terms, to which, without question, he might have expressly agreed." But it does not follow because a man might have expressly agreed to other terms, that you may give parol evidence that he did consent to other terms than those expressed in his written agreement, according to its legal import. If the court meant to say that parol evidence may be given to contradict the legal import of the contract of indorsement of a negotiable instrument, we cannot concur with them; and as the case before them did not require them to go so far as that, we do not think that they intended it. But before we can give the instruction now prayed, we must go to that extent. The usage would convert the conditional into an absolute obligation to pay the money, at all events. The note would, in effect, become joint and several, and the transaction, instead of being a mercantile discount, would be a direct loan, and

the bank, by taking interest in advance, would be chargeable with usury. It is only by maintaining the negotiability of the note, and proving the transaction to be what it purports to be, that the bank can avoid the charge of usury. The usage, of which evidence is offered, contradicts all that part of the transaction which discriminates it from a direct loan, and, therefore, would so materially vary the original written contract, that the admission of such evidence would be inconsistent with the rules of evidence and the principles of law to which we have before adverted. In the case of Lincoln & Kennebeck Bank v. Page, 9 Mass. 159, cited, also, in the opinion of the supreme court, in the case of Renner v. Bank of Columbia, [supra,] the parol evidence offered was not that demand and notice were entirely dispensed with by any usage or stipulation, but "modified as to time and manner." However broadly, therefore, the court has laid down the doctrine upon which they decided the cause, the case itself is within the limit within which we think the doctrine ought to be circumscribed; that is to say, that, although the parties have entered into a written agreement, yet parol evidence may be given of a parol agreement, made at the same time, in relation to circumstances not provided for in the written contract, but not to contradict or vary the terms of the written contract itself. The case of Renner v. Bank of Columbia goes no further. The principal question in that case was, whether demand and notice on the day after the last day of grace, was sufficient to charge the indorser of a promissory note. Evidence of the usage of the banks was received without objection, and, under that usage, the knowledge of which was brought home to the defendant under such circumstances as justified an inference of his assent to it, the verdict and judgment were for the plaintiff. Whatever inferences may be drawn from the reasoning of the court, in that case, we do not think ourselves justified in extending the doctrine further than the case itself will warrant. We are therefore of opinion that no parol agreement, made at the same time with the written agreement, can alter or control its legal import, and that no evidence of such a parol agreement can be admitted. If we do not stop here, we know not to what extent the doctrine contended for may not be carried. If the particular usage of any individual banker, or even of a bank, through whose hands a negotiable paper may have passed, is to control the rights and obligations of the parties, no man can be safe in receiving or passing away such paper. Courts and merchants have been, for ages, endeavoring to ascertain and fix, with precision, the rights and obligations of the parties to negotiable instruments, and it is highly important that they should be settled. But the doctrine contended for, will make every thing depend upon local or individual usage. It will produce a state of uncertainty which

will lead to endless litigation. The instruction which the court is required to give to the jury is, that it is not necessary, in order to charge the defendant, as executrix of the said George, in this action, on his indorsement aforesaid, to prove that any demand of payment of the said note, had been made on the said James, provided the jury should believe the evidence stated, and should therefrom draw the inferences stated in the hypothesis.

Prima facie, the bank was bound to make demand of payment from the maker. Nothing could excuse them from making it but the agreement of the indorser to waive it. No direct evidence of such an agreement is stated, nor is the fact stated by way of inference in the hypothesis; but evidence is stated, from which it is supposed, by the plaintiffs, that the jury may, and ought, to infer that fact. Unless the jury find that fact, the instruction cannot be given—yet that fact is not contained in the statement of facts upon which the law is supposed to arise. An understanding and expectation that the note would be treated as it was, is something short of an agreement that it should be so treated. Connected with other circumstances, it may be evidence of such an agreement, but it is not the agreement itself, and the court cannot, upon a case stated, infer any fact as they can on a demurrer to evidence. Every prayer to the court to instruct the jury is grounded upon a supposed finding of facts by the jury; and before the court can say what the law would be upon such a finding, they must consider the facts as found. The same rule, therefore, is to be applied to the hypothetical statement, as to a special verdict. The court can draw no inferences of fact. Every thing relied upon must be explicitly stated. The fact of the agreement to waive the demand not being anywhere stated, and the court being of opinion that the evidence will not warrant the jury in inferring that such an agreement was made by the defendant's testator, we cannot give the instruction prayed. The jury found a verdict for the defendant. The plaintiffs' counsel took a bill of exceptions, but did not prosecute a writ of error.