[*251] * The Court delivered their opinions seriatim as follows: —
Parsons, C. J.
Assumpsit on four several promissory notes. Of two of the notes, Fales, the defendant, is the promisor; of the other two he is the endorser, William Clap being the promisor. The objections to the verdict arise on the counts upon these last notes. One of them was payable “ in sixty days and grace,” and the other “ in four months and grace.” They were both lodged for collection in a public bank in Boston, where all the parties to these notes live. On the first day of grace, the bank gave the promisor notice that the notes would be due on the third day of grace, and requested him then to make payment, but did not present the notes. On the third day of grace, the notes not being paid, notice was given to the defendant, the endorser.
The objection is, that there was no demand of payment of the promisor, when the notes were due.
A note of hand is not, by the laws of this state, entitled to grace, unless it be expressly made payable with grace, (a) And the endorser is not holden, without his consent, to pay the note, unless it has been presented to the promisor when due, and payment demanded ; or due diligence used for that purpose. When a note is made payable with grace, the terms must have the same construction as are given them by the law-merchant; and consequently the note is not due until the expiration of the time of grace, which is three days, unless the last day be not a day of business, and then it is two days. I must, therefore, infer that the endorser is not hulden upon his endorsement of these notes without his assent, because the condition, arising from the construction of law, on which he engaged to pay, was not performed.
But as this condition is implied by law for the benefit of the endorser, like all other conditions, it may be waived by him for whose benefit it was made. And it is contended that in this case the defendant, when he endorsed these notes, agreed that if the notes should be lodged in any bank in Boston for collection, and if the bank should, according to its usage, notify the promisor on the first day of grace, that the notes would be due on the last day of grace, and should request him to make payment, and should [*252] afterwards, on the *last day of grace, notify the defendant, the endorser, that the notes were not then paid, that he would be answerable on his endorsement. Now, if the *225 defendant made this agreement, he must, both in law and equity, be holden to it.
The evidence is the usage of the banks- in Boston, of notifying in this manner the promisor and endorser of any note, made payable with grace, and lodged for collection, and the payment by the parties on such notice; and that the defendant was conusant of this usage, and had in other cases conformed to it. This usage, I am satisfied, is evidence of the defendant’s agreement proper to be submitted to the jury, to infer from it the agreement of the de fendant. Evidence of this kind, and for this purpose, is not to establish new law, but to prove that the defendant has waived a condition implied by law for his benefit, and has consented to other terms, to which without question he might have expressly agreed, (a) This objection to the verdict ought not, in my opinion, to prevail.
The last note is a promise to pay “ six hundred and eighty dollars.” These words nearly complete the line, at the end of whicii is a dash. — Below this line, at the left side of the page, and nearly on the same line with the promisor’s name, are written the words [Foreign Bills] included by brackets. The verdict, being general on all the counts, is objected to, because this last note is not a negotiable note, being made payable, not in cash, but in foreign bills.
It is not clear that we can, as judges, precisely determine the import of the words foreign bills; but I think we may do it with reasonable certainty. It is the common sense of the people, and must be our understanding, that when the word bills is used as a medium or subject of payment, the parties intend bank notes of some description. As judges, we can take notice that several in corporated banks do their business in Boston, and that there are many incorporated banks who do their business in other towns, some at a greater, and some at a less distance from Boston. This notice we have from the public acts of incorporation. We must take notice, in common with the people, that bank notes derive *226 their value, not only from the certainty, but the facility, of payment; consequently that a man in trade in Boston, holding a f * 253 ] bill issued * by a bank at a distance from Boston, can less easily obtain payment, than he could if the issuing bank was near to him; and that the different facility of procuring payment of different bills may create a difference in their value. I must, therefore, conclude that the import of the words “ foreign bills ” is not cash, but something differing in value from cash. The inference is, if these words are a part of the promise, and that by the promise the maker of the note did not bind himself to pay cash, but something, the value of which was to be estimated in cash, that the note objected to is not a cash note.
The next question is, whether these words, thus written and placed, are a part of the promisor’s contract. There is no evidence by whom the body of the note was written, or whether these questionable words were inserted before or after the signature, or by the promisor or promisee. I can, therefore, reason only from the face of the note. And it is a reasonable conclusion, that they must all be taken to be the words of the maker of the note, written before it was delivered to the promisee, and not the words of the promisee, assuring to the promisor any honorary or legal indulgence, either absolute or conditional. If they are the words of the promisor, they must be considered either as idle words, or as a part of the promise to which he gave his signature; or as a subsequent memorandum, explanatory of the manner in which the promise was to be performed. I am not authorized to consider them as words without meaning; and I do not think it material, whether they were part of the original contract, or added in explanation of it. For when the promisee took the note with these words on it, he was subject to the explanation in the memorandum, if it was one, as much as he would be bound by these words, if they were a part of the promise.
The words may secure a benefit to the promisor, and I consider him as stipulating that the money might be paid in foreign bills ; and I consider the promisee, by taking the note thus written, as agreeing to the stipulation. (b) And I can have no doubt, if, on the day of payment, the promisor had tendered to the promisee foreign bills in payment, and they had been refused, that this tender and refusal might have been well pleaded to a subsequent action upon the note.
[ * 254 ] * It is, therefore, my opinion that the note was not, in its original creation, a note for the absolute payment of cash, and so was not negotiable. This opinion, resulting from the *227 face of the note, would have been different, if there had been any evidence that by these words the parties had a different design.
But is the verdict to be set aside for this cause ? The action is by the endorsee against the endorser; and it has been in this state the immemorial usage for endorsees of notes not negotiable to declare against the endorsers as on a negotiable note. This usage may be in a few words explained.
The statute of 3 and 4 Anne, c. 9, was never enacted here; but in practice the provisions of the first section were early adopted, and the form of declaring on negotiable notes resulting from that statute was extended to notes not negotiable. It may, therefore, be considered as the common law of the commonwealth, that, all cash notes are negotiable; and that all notes for merchandise may be sued by the promisee against the promisor, and, when endorsed, by the endorsee against the endorser, who may declare in the same manner as he might if the notes were negotiable, (c)
Upon this principle, the want of negotiability in the note comes to be no objection to the verdict. But it is insisted that this case is an exception to the general rule, because, although the note was admitted in evidence, yet the plaintiff having declared on it as a cash note, it did not support the count. As it is not a cash note, it did not support the count; and if the defendant had objected to it on that ground, the objection must have prevailed. But I am strongly inclined to the opinion that objections to the evidence, as not comporting with the declaration, ought not generally to be admitted, unless the objections were made at the trial, and the point reserved. A contrary practice would introduce much mischief. Had such objection been made at the trial, according to the ancient usage of the Court, in granting amendments at any time before the cause is committed to the jury, the plaintiff might have amended his declaration, and cured the defect, and thereby saved much time and expense to the parties.
But I think there ought to be exceptions to this rule, which as a general rule is correct. If the objection goes to arrest * the judgment, it ought to be heard; because the de- [ * 255 ] fendant may move in arrest of judgment, after he has failed in a motion for a new trial. But this is not the present case. If the declaration unamended had varied the defendant’s defence, *228 either as to the principles of it, or as to the rule of damages, the objection might be made. But it appears to me that this case is not within this exception. For on producing the note to the jury, it was competent to the defendant to have given any thing in evi dence to defeat the plaintiff’s demand, or to ascertain the damages, which he could have given, if the declaration had been amended.
Another exception may be, when judgment according to the verdict will not be a bar to another action on the same contract, on the same breach of it. And I think the defendant’s case is within this exception.
When judgment in one personal action is a bar to another personal action, the cause in both actions must be the same; which must appear from the record, or from the averment of the party pleading. But he cannot aver any thing repugnant to a record, to which he is a party. Now, a contract to pay money, and a contract to pay money’s worth in bills, appear to me to be essentially different, and cannot be averred to be the same contract. And if we were to render judgment on this verdict, it could not be pleaded in bar to an action brought by the plaintiff against the defendant, on the same note, declaring on it as a contract to pay money in foreign bills.
Upon the whole, it is my opinion that the verdict ought to be set aside, and a new trial granted. The plaintiff may then amend, or, if his case will admit of it, explain by evidence, that by the words “ foreign bills ” the parties intended an effect consistent with the negotiability of the note.
Sedgwick, J., declared his concurrence in opinion with the Chief Justice.

 [Vide Rev. Stat. c. 33, § 5. — Ed.]

 [Such an agreement can hardly be made out from the facts, nor do they appear to be sufficient to control the plain import of the contract. — Blackett vs. The Royal Exchange Assurance Company, 2 Cromp. & Jerv. 244, 249, 250. — Schooner Reeside, 2 Sumner, 567. — Smith vs. Wilson, 3 B. & Ad. 728. — Taylor vs. Briggs, 2 Car. & P. 525. — Homer vs. Dorr, 16 Mass. Rep. 26.—Bryant vs. The Commonwealth Ins. Co., 6 Pick.131. — Leach vs. Perkins, 5 Shep. 462. And see note to Lincoln and, Kennebec Bank vs. Page, 9 Mass. Rep. 157, to Blanchard vs. Hilliard, 11 Mass. Rep. 85, and to Smith vs. Whiting, 12 Mass. Rep. 6. But see City Bank vs. Cutter, 3 Pick. 414. — Smith vs. Whiting, ub. sup. — Lincoln and Kennebec Bank vs. Page, ub. sup. — Blanchard vs Hilliard, ub. sup.—Pierce vs. Butler, 14 Mass. Rep. 303.— Widgery vs. Munroe, 6 Mass. Rep. 449. — Whitwell & Al. vs. Johnson, 17 Mass. Rep. 449. — Odiorne vs. Maxcy, 13 Muss. Rep. 181. — Loring vs. Gurney,5 Pick. 15.— Tibbetts vs. Sumner, 19 Pick. 166. — Parrott vs. Thacher, 9 Pick. 426. — Meldrum vs. Snow, 9 Pick. 445. — Stevens vs. Reeve, 9 Pick. 198. — Dwight vs. Whitney, 15 Pick. 179. — Hartford Bank vs. Stedman, 3 Conn. Rep. 489. — The Bank of Columbia vs. Fitzhugh, 1 Har. & Johns. 239. — Pearson vs. Bank of the Metropolis, 1 Peters, 93 — Raborg vs. Bank of Columbia, 1 Har. & Johns. 231. — Ed.]

6) [There seems to be nothing to justify this addition to the plain and intelligible terms of the promissory note. — See Pierce vs. Butler, 14 Mass. Rep. 303.— Ed.]

 [It may well be questioned whether the instances in which such actions had been at this time sustained, proved any thing more than sheer ignorance of the law. The practice of the profession and of the courts, in the times referred to, was too irregular and uncertain to afford any sound rule, or establish any law, relative to this matter And, aside from the statute of 3 and 4 Anne, c. 9, it is not easy to distinguish as to its effect between a promise, in the form of a promissory note, and any other simple con tract, where the consideration in pleading must be set forth. —Ed.]