## TUCKERMAN & AL. vs. HARTWELL.

If the place of payment of a note is designated in a memorandum at the bottom; or if to the acceptance of a bill is added a particular place of payment, with the assent of the holder; such memorandum or qualification is part of the contract.

And if only the name of the place be written at the bottom of the note or bill, it is for the jury to determine when, by whom, and for what purpose it was placed there.

*Assumpsit* by the plaintiffs as indorsees, against the defendant as drawer, of a bill of exchange, of the following tenor,—viz—

" $445. Sixty days from date and grace, pay to the order of
" Messrs. *Whittier and Tuckerman,* four hundred and forty-five
" dollars, value received, and place the same to account of your
" ob't ser't, *John T. Hartwell.*
" *Joseph T. Wood, Esq.*
" *Augusta May* 16, 1816."

The acceptance was written across the face of the bill, in these words— " Accepted to pay in *Boston.* *Joseph T. Wood;*"—after which the bill was indorsed by the drawees to the plaintiffs. At the bottom of the bill, and near the left hand corner of the paper, was a writing which was not plainly legible, but which the defendant's counsel at the trial read as the name of " *A. F. Howe &*
*Co.*"; and contended that it was a part of the acceptance, designating the place in *Boston,* where the bill was to be presented for

payment.   For the plaintiffs it was contended   that those words, if legible, were no part of the acceptance; and the holders of the bill were not bound to present it at any particular place in *Boston* for payment;—if the bill was in the city at its maturity, and the acceptor was not there, it was dishonored, and the drawer, upon due notice, was holden to pay.  . This due notice was proved.

It was also proved that the bill was presented for payment by the plaintiffs' direction at the counting room of *A. F. Howe & Co.* on the nineteenth day of *July* 1816.

Upon this evidence, *Weston J.* before whom the cause was tried, instructed the jury that if they were satisfied that the name of *A. F. Howe &.Co.* was placed upon the bill by the acceptor, at the time of the acceptance, and was intended to designate the place in *Boston* at which the bill should be presented for payment; and that the plaintiffs knew that it was so intended, and where the place was;—it was incumbent on the plaintiffs to prove a demand at that place.   But, he also said, the presentment for payment on the *nineteenth* day of *July* was too late.   To avail the plaintiffs it should have been on the day preceding.   Hereupon the jury returned a verdict for the defendant, which was taken subject to the opinion of the whole Court upon the correctness of those instructions.

*Sprague,* for the plaintiffs, contended that the words at the bottom of the bill were no part of the acceptance, which was written in another place, across the face of the bill, and was intelligible and perfect in itself.   *Chitty on Bills* 321, 325, 326, notes *a. b.*    *Saunderson v. Judge* 2 *H. Bl.* 509.    *Exon v. Russell* 4 *Maule & Selw.* 505.

But if they were intended as a part of the acceptance, this was not binding on the payees, unless known and admitted by them at the time of the acceptance.    *Storer v. Logan* 9 *Mass.* 55.    And here was no evidence to that effect.    The utmost the jury can be said to have found, is, that it was the appointment of a place by the acceptor, at which he would make payment.    But such *appointment*, being no part of the acceptance of a bill, only gives the holder his option, to present it at the place appointed, or to the acceptor in person, according to the written engagement ap-

parent upon the face of the bill. 3 *Johns. Ca.* 71. *Parker v. Gordon* 7 *East* 385. *Chitty* 328. 4 *Maule & Selw.* 462. *Mason v. Franklin* 3 *Johns.* 202. *Boot v. Franklin* 3 *Johns.* 210. It was enough to charge the drawer, if the bill was in *Boston* at its maturity.

And the construction of the instrument, and the legal effect of the acceptance were purely matters of law, which the Judge should have declared to the jury. Where there is an *omission* of proper instructions to the jury, the Court will grant a new trial. *Ulmer v. Leland* 1 *Greenl.* 135.

*R. Williams* for the defendant, adverted to the diversities of opinion at Westminster hall upon the effect of a memorandum made at the bottom of a bill or note, by the maker or acceptor, designating a particular place of payment;—and cited *Saunderson v. Judge* 2 *H. Bl.* 509. *Callaghan v. Aylett* 2 *Camp.* 549. *Lyon v. Sundies* 1 *Camp.* 523, 425, note. *Saunderson v. Bowes* 14 *East* 500. *Hodge v. Fillis* 3 *Camp.* 463. *Dickenson v. Bowes* 16 *East* 110. *Howe v. Bowes* 5 *Taunt.* 30. *Gammon v. Schmoll* 5 *Taunt.* 344. *Fenton v. Goundry* 13 *East* 459. But he considered the question as put at rest by *Rowe v. Young.* *Brod. & Bing.* 165, by which the presentment of a bill at the place designated for payment is rendered indispensable, whether the place be inserted in the body of the contract, or merely noted by a memorandum at the bottom; the latter being now taken as a part of the contract. And agreeably to this are the *American decisions.* *Foden v. Sharp* 4 *Johns.* 184. *Woolcot v. Van Santvoord* 17 *Johns.* 248. *Carley v. Vance* 17 *Mass.* 389.

There is an essential difference between the liability of a maker or general acceptor of a note or bill, and that of the drawer or indorser; the former being absolute,—the latter conditional and contingent. The party seeking to charge the drawer, must shew a strict compliance with the conditions of his undertaking. In the present case the engagement was to pay, if the acceptor should not pay according to the terms of his acceptance. These terms the payees were willing to receive, and the jury have found that they were well understood by the parties, and formed part of the contract. With this contract the payees have never com-

plied, by presenting the bill at the place in *Boston* appointed for payment, nor even by making any inquiry there for the acceptor or his bankers; and thus have lost their remedy on the drawer by their own laches. *Chitty on bills* 333. 2 *H. Bl.* 509. 7 *East* 385. 19 *Johns.* 391. *Jones v. Fales* 4 *Mass.* 245. *Starr v. Met-calf* 4 *Camp.* 217. *Trecothick v. Edwin* 1 *Stark.* 469. *Platt v. Smith* 14 *Johns.* 368.

MELLEN C. J. at the succeeding *August* term in *Oxford*, delivered the opinion of the Court, as follows.

Though it does not appear expressly that the bill in question was in *Boston* on the 18th of *July* 1816, yet, as it was presented for payment at the *counting room* of *A. F. Howe & Co.* on the 19th of that month, and as no reliance has been placed on this circumstance, if by the terms of the acceptance it was payable in *Boston generally*, perhaps the action is maintainable; though there is not proof of any inquiry and search for the drawer, who, it is admitted, was at that time an inhabitant of *Wiscasset* in this State. But we give no opinion on these points, because they have received but little attention from the counsel, and also because we place our opinion on another ground.

The only questions then, are, what is the *legal character* of the words " *A. F. Howe & Co.*" written at the bottom of the bill ? For *what purpose* were they placed there; and *what operation*, according to law, do they have in regard to the *acceptance* and the *rights* of the parties ? The answer to these questions is not unattended with difficulties. With a view of ascertaining the *words themselves*, as well as their *import, design*, and *use*, the inquiry was submitted to the consideration of the jury; and under the instructions they received from the presiding Judge, they have found that they were placed on the bill *by the acceptor*, at the *time of the acceptance*; that they were *intended* to *designate* the *place in Boston* at which the bill should be *presented for payment*; that the *plaintiff knew* that *such* was the intention; and knew also *the place* thus designated as the place of payment. These facts thus found, taken in connection with the circumstance of the bill having been indorsed *after acceptance*, furnish proof that the nature and

qualification of the acceptance, whatever they may be, were known to the payees at the time of the indorsement. Thus it appears that *all* the parties to the bill have acted with full knowledge of the nature of the contracts they have made. One objection urged against the instructions of the Judge is, that he ought not to have submitted the above mentioned facts to the consideration of the jury, but should himself have decided the legal effect of the acceptance, and of the additional words at the bottom of the bill. The answer to this objection is, that some of those facts could not appear from inspection; such as the *time when* the words were placed there, the *person who* wrote them, and the *purpose* for which they were written. These were facts proper for the jury to settle; and as to their *legal effect* the Judge *did* decide. His instruction to them was, that if they *should* find those facts, and also *knowledge* on the part of the plaintiff, to be as they actually find them, that then, on legal principles, the plaintiffs were not entitled to recover. The finding of the jury amounts to this, that the words added at the bottom of the bill are a *part* of the *acceptance*, and, of course, have the same effect as though added immediately after the word " *Boston*"; and the acceptance would then have stood thus, " accepted to be paid in *Boston* at the store of *A. F. Howe & Co.*"

In this view of the facts proved, and the instructions given, we perceive no error, provided the *legal conclusions* drawn by him were correct, as to the operation of the acceptance thus proved and understood. An examination of the English decisions on the subject of *special* and *limited* acceptances, and the nature and effect of a *memorandum* on a note or bill, as to the place of payment, shews, at one view, *change, variance* and *confusion* of opinions ; not only as to the legal operation of these qualifications of the contract created by *designation of place* for payment of a bill or note, but as to the *mode of declaring* upon such bill or note. The cases can never be reconciled, and we must either continue to go on in uncertainty in our endeavors to preserve uniformity of decision in the commercial world, as far as we are able, by similar fluctuation of opinion ; or else extract the good sense and sound reason of these conflicting cases, and then govern ourselves by settled principles. There have been so many *distinctions*

Tuckerman v. Hartwell.

introduced, not to say in some instances, *refinements*, that the real and honest intentions of the contracting parties, have in numerous instances been overlooked or disregarded. The principle of law seems to be well settled in *England* that when a *particular place of payment* is introduced into *the body* of a bill of exchange or note, and *not by way of memorandum*, whether the action be against the *maker* or *indorser* of a note ; or the *drawer* or *acceptor* of a bill ; the bill or note must be presented and demand made at such place, in order to maintain the action. See *Wolcott v. Van Santvoord* 17 *Johns.* 248, and the cases there cited, and the note by the reporter. But if the designation of the place of payment is intimated in a *memorandum* in the margin or at the bottom of a note ; or if the acceptance of a bill *is accompanied by words.* " payable at" a particular place, such memorandum or qualification is not considered as *any part of the contract*, as it regards the note or acceptance, according to several English d⬛, and according to several others, the *contrary principle* is established. In *Smith v. Delafontaine*, tried before *Lord Mansfield in* 1785, *Saunderson v. Judge* 2 *H. Bl.* 509, *Lyon v. Sundies & Sheriff* 1 *Campb.* 423, *Wild v. Rennard Ib.* 425, *Trapp v. Spearman* 3 *Esp.* 57, *Nicholls v. Bower* 2 *Campb.* 498, *Price v. Mitchell* 4 *Campb.* 200, and *Fenton v. Goundry* 13 *East.* 459,— such memorandum or qualification was holden to be no part of the contract. In *Parker v. Gordon* 7 *East.* 385, *Ambrose v. Hopwood* 2 *Taunt.* 60, *Calligan v. Aylett* 3 *Taunt.* 397, *Gammon v. Schmoll* 5 *Taunt.* 344, and *Chitty* (2 *Ed.* 1807) 184, the *contrary* principle has been adhered to. If a bill of exchange be *general*, and the drawer accept it *payable at a particular place* ; thus limiting its generality, the holder is not *bound* to take such an acceptance ; but *Johnson* in the note above mentioned, says, " If a holder of a bill, who is *not bound* to receive a qualified " acceptance of it, does think proper to receive an acceptance " restricting the payment to a particular place, is it not, as " between him and the acceptor, as much a part of the contract " as if it was inserted in the bill itself, or as much as in the case " of a promissory note made payable at a particular place ? " There seems to be no foundation for the distinction. The " Court of C. B. are more consistent when they put it on the

" ground that it is a *qualification* of the contract and a *condition* " *precedent*, the performance of which must be alleged and shown " to entitle the plaintiff to his action." There certainly is much sound sense in this reasoning of the reporter. Besides, when the acceptor thus designates the place of presentment and payment, the presumption is that he will place funds there for payment; and when the holder receives such a qualified acceptance, why should he not apply at the place appointed, where the funds are presumed and agreed to be placed ?—for the same reason that the holder of a town order is bound to present it to the town treasurer, before he can maintain an action against the town, as we have decided in the case of *Varner v. Nobleborough 2 Greenl.* 121.

The acceptance of a bill of exchange is an independent act ; as much so as the drawing of the bill. The drawer may accept on his own terms, but the holder is not bound to receive such an acceptance varying from the bill ; if however, he does so accept it, why in reason and justice should he not be considered as agreeing to its terms and conditions. And when this restriction or qualification is in the form of a *memorandum*, and is by all parties considered as a qualification, why should it not be considered a part of the *contract*, and as binding on all parties *assenting to the same*, as if inserted in the body of the bill or note ? To make a distinction seems to be to give as much importance to a *shadow* as a *substance*. Several of the cases before cited, seem to make a distinction between actions against the acceptor upon a qualified acceptance, and actions against a *drawer* or *indorser* ;—that in the *former* case, the acceptance renders the acceptor universally liable and absolutely so, without any demand at the *particular* place named in the acceptance ;—while in the latter case, an action cannot be maintained unless a demand or presentment has been made at the appointed place ; because the liability of the *drawer* and *indorser* is always *conditional*. The line of distinction however is not drawn with clearness, and therefore we have not founded our opinion upon it, though there seem to be good reasons for the distinction.

Considering the difference of opinion which has prevailed in the English Courts, there is more room and more reason for our careful examination of principles and the adoption of those, for

our guides, which appear to be founded in the most substantial justice and soundest good sense ; those principles which sanction and give effect to legitimate contracts, in whatever form they are made, which are perfectly understood, and are not forbidden by any statutory regulations. But we consider the principles established in the case of *Jones v. Fales 4 Mass.* 245, as strengthening the arguments we have used as to the construction and effect to be given to the qualifying language of the acceptance. The action was founded on a promissory note given by *Clapp* to *Fales,* whereby he promised to pay him or order $680 in sixty days. Near the bottom of the bill were inclosed in brackets the words [*foreign bills*]. The note was indorsed by *Fales* to *Jones,* and the suit was against *Fales* as indorser ; and one question in the case was whether the note was a cash note ; and if not, whether it could support the plaintiff's declaration. In the decision of that cause, two questions were settled which are of importance.
One was that the words "*foreign bills*" were explained by parol testimony, in order to ascertain whether they were a *part of the original contract,* or a distinct and collateral engagement, not applicable to the note in the hands of an indorsee. And the Court set aside the verdict for the very purpose of admitting parol explanatory evidence. This authority seems to remove all objection to the propriety of admitting parol evidence in the present case, and submitting the facts relative to the memorandum, the circumstances under which it was made, and its import and intention, to the consideration of the jury. Another point decided was, the legal effect and operation of the words "*foreign bills*," when unexplained by any parol proof.

For the sake of clearness we quote the language of *Parsons C. J.* in delivering the opinion of the Court. He observes, " The " next question is, whether these words, thus written, and placed, " are a part of the promisor's contract. There is no proof by " whom the body of the note was written, or whether these " questionable words were inserted before or after the signature, " or by the promissor or promissee. I can therefore reason only " from the face of the note. And it is a reasonable conclusion " that they must all be taken to be the words of the maker of " the note, written before it was delivered to the promissee ;

Tuckerman *v.* Hartwell.

" and not the words of the promissee assuring to the promissor
" any honorary or legal indulgence, either absolute or conditional.
" If they are the words of the promissor, they must be considered
" either as *idle words,* or as a part of the promise to which he
" gave his signature ; or as a subsequent memorandum, explana-
" tory of the manner in which the promise was to be performed.
" I am not authorized to consider them as words without meaning,
" and I do not think it material whether they were a part of the
" original contract or added in explanation, for when the promis-
" see took the note with these words on it, he was subject to the
" explanation in the memorandum, if it was one, as much as he
" would be bound by these words, if they were a part of the
" promise." According to this decision, the words *"A. F. Howe*
*& Co."* written by the acceptor at the time of the acceptance,
and the return of the bill to the payees, would have rendered the
memorandum explainable, had the present action been brought
by them, and such explanation would have bound them ; and for
the same reason it was explainable in the hands of the plaintiffs
as indorsers ; and as by the finding of the jury, knowledge is
brought home to them, of course they also are bound by the
memorandum, if it is considered as such, in the same manner as
they would have been, if by the bill itself, the drawer had been
requested to pay its amount at the store of *A. F. Howe & Co.*
*Boston.*

In a word, according to the case of *Jones v. Fales,* the words
" *A. F. Howe & Co."* were a part of the contract of acceptance,
and therefore, binding, even without explanation ; and being by
law explainable, and having been explained and proved to have
been inserted for the very purpose of designating the place where
the bill *should be,* not merely *might be* presented ; and this being
known and understood by all concerned, all are bound by it. And
as the bill was not in due season presented for payment at the
place designated in the acceptance, the present action cannot be
maintained.

But there is another point of view in which the cause may
be considered. As the bill in question is general in its form,
not specifying any particular place of payment ; and as the
restriction relative to the place of payment was inserted by

the drawee in his acceptance, he had as much right to make the
bill payable at a particular store in *Boston*, as in *Boston* generally.
Now in the body of the acceptance, *Boston* is made the place of
payment ; and in the memorandum at the bottom of the bill the
store of *A. F. Howe & Co.* is made the place ; and as the jury
have found that all was written at the same time, and for the same
purpose ; and as this restricted acceptance was not objected to
by the holders of the bill, nor the bill protested on that account,
as it might have been ; and as knowledge of all this was given to
the plaintiffs, as the jury have found ; all parties must be consid-
ered as having assented to this limited acceptance, and must be
bound by it.   But supposing that the payees and the plaintiffs
were never bound by it, and that they had a right to treat the
restrictions as to the place of payment, as nullities even without
a protest, how would the cause stand then ?   If such were the
case, it is clear that the bill should have been presented for
payment, not in *Boston,* but at the house or counting room of the
drawee at *Wiscasset,* where he was well known to reside and do
business; yet it was never presented there.   Therefore, whether
the plaintiffs were bound or not bound by the restrictions in the
acceptance, the presentment was ineffectual.   On this latter
ground also the plaintiffs must fail.

As the jury have found for the defendant there must be judg-
ment on the verdict.