The opinion of the Court was delivered at this term by
Parker C. J.
The question first discussed in the argument relates to the competency of evidence which was essential to prove the plaintiff’s right to recover. Hodges, the cashier of the bank, testifies that a letter had been received by him or by West, one of the directors, from the defendants, m which they propose for discount the note of Cushing & *441 Appleton, made payable to and indorsed by them, and also request that the notices to Cushing & Appleton should be sent to their care, and state that they would take care of the notes and see to the renewals. He stated that he had made diligent search for the letter but could not find it, nor could it be found by West, who had also searched for it; and he suggested that it was probably consumed by a fire which happened in the bank, by which many other papers were known to have been destroyed. It was objected that parol testimony of the contents of the letter was not admissible, because there was no direct or sufficient proof of the loss or destruction of the letter. The argument is founded on the assumption, that preliminary to proof of the contents of a paper, there must be evidence of the absolute, irrecoverable loss of the paper itself by fire or some other destructive agent. Now we do not understand this to be the law, but that the fact of loss may be proved by presumptive evidence, as well as any other fact. That a paper cannot be found, all due diligence having been used m searching for it, is sufficient to raise the presumption of loss, and to let in evidence of the contents ; if the rule of evidence were more strict than this, great mischief would ensue, for it is but seldom that an actual destruction of a paper can be made to appear. Even in the case of title deeds to estates and bonds, the allegation of loss by time and accident may be made out by presumptive evidence, for it is always on such pleadings a question for the jury, whether such deed ever existed and were lost; on either of which points issue may be taken. Read v. Brookman, 3 T. R. 151. It seems that in England a party who claims under a paper which ought to be in his possession, if he would prove the contents on a suggestion of loss, is held to make affidavit of the loss, in order to be entitled to secondary evidence. This surely cannot be required when he can produce evidence of actual destruction, but must apply to cases where the evidence of loss is only presumptive, and so probably it would be ruled in this Court. But in the case before us, the witness is the officer of the bank, who had the lawful custody of the papers belonging to it, so that his testimony of its loss must supersede the necessity of an affidavit of the party, even if capable *442 of making affidavit, which this party is not, being an mcorpo rated company. Davis v. Spooner, 3 Pick. 284.[1]
The witness Hodges having testified that the letter, whose contents he stated, was directed either to him as cashier, or to West, one of the directors, it is objected that the evidence of loss was defective without the testimony of West that he also had searched for it and could not find it. The testimony of West could not have been received, for he was a stockholder, director and president of the bank, and therefore interested in the issue on trial; and he was further interested, as subsequent indorser, to prove facts sufficient to enable the plaintiffs to recover of those who stood before him on the note. He was an incompetent witness therefore upon the issue to the jury. But then the point arises, whether as the question was on the admission of secondary evidence on account of the loss of the primary, which preliminary fact was to be determined by the Court, the affidavit of West ought not to have been tendered. The case as made out by the cashier was this only, that a letter was written to him or to West, that he had searched and could not find it, and that it might have been burnt at a fire which happened at the bank. Had be testified that whether directed to him or West it bad been filed among the papers of the bank, the case would have been sufficiently made out for proof of the contents ; but for aught that appears, it might have been filed by West among his own letters, if directed to him ; and if such were" the case, the proof of its loss seems to be incomplete without a declaration from West that he had searched among his papers and could not find it ; for the testimony of Hodges to this point is merely hearsay, since it could not be within his knowledge, except by information from West, that he, West, had diligently searched for the letter.
A new trial therefore seems to be necessary, because the agreement on the part of the defendants, to be defaulted, is
*443 founded upon the admissibility of this evidence; and although there may be other evidence sufficient to sustain the plaintiff’s case without this letter, we cannot enforce a default but according to the agreement of the parties.
But to save time hereafter, as the case has been fully argued on all the points which can arise in it, xve proceed to express our opinion on the controverted points, on the supposition that the contents of the letter were rightfully proved, and upon the case as it would stand without the letter on the other evi dence introduced.
The essential point to be made out by the plaintiffs, is notice to the defendants as indorsers, of the non-payment of the note by the makers, or something which in law is equiv alent. If a demand on the makers had been necessary, enough has been proved to estop the defendants from denying that it xvas made. The cashier states that a demand in the usual form was made out by him and transmitted to the defendants, who had before agreed to receive it for the makers. If it did not reach the makers, it was the fault of the defendants, and they could not take advantage of its miscarriage.
Actual notice xvas certainly not given. The making out a notice and putting it into the cashier’s desk was of no avail. But it is contended by the plaintiffs, that there was an agreement antecedent to the loan, but referring to it, which superseded the necessity of notice and operated in law as a waiver. The defendants deny that such is the legal inference from the evidence ; and if it be, they deny its legal effect upoti this contract; and they also deny the right of the plaintiffs to avail themselves of it under the allegation of actual notice.
The last point is so clear, that it xvill be convenient to dispose of it first. It is held to be law, that waiver of notice is equivalent to actual notice, and is properly proved on the allegation of actual notice. 2 Stark. Ev. 274.[1]
The agreement is prospective in its nature, and is intended to apply to a series of notes growing out of the same original *444 contract which was produced by it. The cashier testified that this note was given in renewal of two other notes, in which the same parties were respectively promisors and indorsers, and on which notes part payment had been made by the defendants and the discounts paid by them. And there was no evidence on the part of the defendants to break the chain of the transaction from the first discount made under their agreement down to the note in controversy.
In regard to the form and time of notice for the makers, it sufficiently appears by the testimony of the cashier, that the defendants were conusant of them, and therefore would be bound by them. It is urged that there are many discrepan cies and inconsistencies in the testimony of the cashier, which ought to discredit his evidence, but if any reliance was intended to be placed on this, the right forum, the jury, should have been applied to. Whatever he states positively, we must take as true. Indeed, considering the course the argument has taken, it is to be regretted that the jury had not passed upon the case,' instead of its being referred to us without such a clear separation of the law from the fact as is desirable. A part of the testimony of the cashier on a point of importance will show the value of this remark. He states that he had conversed with one of the defendants on the subject of the note, who said they had not been duly notified, &c. The witness asked him if he had not received the notice to the makers, addressed to their care, and that he made no reply which either admitted or, denied that they bad received such notice. Now as it does not appear by the cashier’s testimony how he sent on that notice, it might be a question with the jury whether it was received or not, and they might have inferred that it was, from the silence of him to whom the question was put; an inference which the Court cannot make.
As to the inference to be drawn from the evidence, whether or not it be a waiver, or rather whether a jury would have been justified in making that inference, for such is the question put to us by the report,— the facts proved by the letter, or its contents, as testified by the witness, are, that in the year 1822 or 1823 the defendants had applied to the bank for a discount of notes given by CusHng & Appleton to *445 them, which they were to indorse, that they engaged to attend to the renewals and take care of Cushing & Appleton’s notes, and directed that the notices addressed to Cushing & Appleton should be directed to the care of the defendants and sent to iheit,
If the agreement can b? traced' in it 3 effect aitd-sper-ailon to the note sued in this action, we can give it no other construction than that of an undertaking to renew or pay the note in case these terms should be complied with. “ We will see to the renewals and take care of Cushing & Appleton’s notes,” can mean nothing more nor less than, “ You need not trouble yourselves with Cushing & Appleton, we agree to stand in their stead ; send their notices to us.” The notice, according to the testimony of the cashier, was so sent; and then, according to the agreement of the defendants, they were to take care of the notes. If Cushing & Appleton were to pay, it was for the defendants to see to it. They had made themselves- responsible to the bank, were to transmit the money, or send a new note if there was to be a renewal. In either case the money or the note was to pass through their hands to the bank, and therefore they must have had knowledge whether it was paid or not; and this being according to the very terms on which the note was discounted or renewed, was entirely equivalent to or a substitute for the notice which otherwise they might have exacted. And we think that the agreement so proved must have relation to this note ; though made before its existence.
The testimony of Crocker was material, as it corroborated the evidence which resulted from the letter and the testimony of the cashier. Perhaps standing alone the effect of it might be questionaAe, as it does not appear that the bank acted under any information from Crocker in making the loan; which originated before this conversation took place.
As to the point of law arising out of the evidence, viz. that it proved a contract different from the written contract in suit, and therefore could not be allowed, as it would go to contradict or vary the written .contract, we think the argument, though ingenious, is founded in fallacy. The counsel truly says that the written contract is, that the defendants will *446 pay the note if on failure of payment by the maker he shall be seasonably and duly notified ; and he adds, the evidence set up is of a different contract viz. that the defendants will pay the note at all events, or whether they are seasonably notified or not. The fallacy consists in this, that the defence does"'not'-atempt'to change the contract, but to show that a condition beneficial for the defendants had been waived .by them ; that they had agreed to dispense with notice, not that by the contract itself notice would not be necessary. This was long ago settled in the case of Jones v. Fales in this Court; it is the law of England and of the United States and of New York. Jones v. Fales, 4 Mass. R. 251; Widgery v. Munroe, 6 Mass. R. 450 ; Union Bank v. Hyde, 6 Wheat. 572 ; Renner v. Bank of Columbia, 9 Wheat. 582 ; Phipson v. Kneller, 4 Campb. 285 ; S. C. 1 Stark. R. 116 ; Bayley, (Phil, and Sewall’s ed.) 182 ; Gowan v. Jackson, 20 Johns. R. 176 ; Agan v. M'Manus, 11 Johns. R. 180 ; Leffingwell v. White, 1 Johns. Cas. 99.

New trial granted.

 See 3 Pick. (2d ed.) 237, n. 1 ; Welsh v. Barrett, 15 Mass. R. (Rand’s ed.) 384, n. a ; 1 Stark. Ev. (5th Am ed.) 336, n. 1. As to the evidence of search and proof of loss requisite to lay a foundation for the introduction of secón» dary evidence of the contents of a written instrument, see 1 Stark. Ev. (5th Am. ed.) 336 to 341.

 See 5th Am. ed. 167, n. 1 ; Bayley on Bills, (Phillips and Sewal s 2d ed.) 447, 448.