## GREENLEAF THORN vs. WILLIAM RICE.

In an action against the indorser of a note, when the facts have been ascer-
tained, whether legal notice has or has not been given, and whether due dil-
igence has or has not been used, are questions of law to be decided by the
Court.

Where the evidence to prove notice to an indorser is too loose, deficient and
uncertain to authorize a jury to find in the affirmative, a Judge of the Com-
mon Pleas may rightly decide, that the action is not maintained, without
submitting the case to a jury.

Where the usage of a bank, in relation to giving notice to an indorser, is so
loose and variable, and so different from what the law requires, as to leave
it uncertain, whether any notice was given to the indorser, *at any time
or place*, or put into the post-office for him, such indorser is not bound by
such usage by doing business with the bank.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J.
presiding.

The cashier of the *Manufacturer's* bank testified, that, " it is
the universal or general practice at said bank to make out the
notices or demands of the promisors and endorsers in *Buxton* and
*Hollis*, and up *Saco River*, a day or two before the last day of
grace, and send them by persons down from those places, bearing
date the last day of grace ; and if no one is down, that then, on
the last day of grace, to put the notice into the post-office. Some-
times notices have been sent by the driver of the *Ossipee* stage,
which is not a mail stage. This has been for the last eight or ten
years the general and universal practice of making demands and
notices to the promisors and indorsers living at *Buxton* and *Hollis*,
and up *Saco River*, and *Abbott* and *Rice* and *Eastman* have been
notified in that way on their notes before this was left at the bank
and since." The other facts in the case are given in the opinion of
the Court.

*A. G. Goodwin*, for the plaintiff.

1. A note payable at a bank must be at the bank, when due
and payable, in order to hold the indorsers. *Woodbridge* v. *Brig-
ham*, 12 *Mass. R.* 403 ; *Berkshire Bank* v. *Jones*, 6 *Mass. R.*
524 ; *Bayley on Bills*, 201, and *note*.

2. The maker and indorser of a note, payable at a bank, tacitly
assent to be subject to such regulations, as are customary at that

bank, when they are acquainted with the usages of the bank. 4 *Mass. R.* 245 ; 6 *Mass. R.* 449 ; 17 *Mass. R.* 449 ; 9 *Mass. R.* 155 ; 9 *Pick.* 420 ; *Bayley on Bills*, 233, 242 ; 12 *Mass. R.* 6.

3. The plaintiff was under no obligation to notify the maker of the note, that it was left at the *Manufacturer's* bank in *Saco*. *Bayley on Bills*, 232, 79. On a note payable at a particular place and time, it is matter of defence to show, that the promisor was then and there ready to pay, and still ready, with a profert in court. *Bacon* v. *Dyer*, 3 *Fairf.* 19 ; *Remick* v. *O'Kyle, ib.* 340.

4. If the plaintiff was under obligations to notify the maker, he has done it conformably to the usages of the *Manufacturer's* bank. If the case of *North Bank* v. *Abbott*, 13 *Pick*.465, be good law, as to the necessity of giving notice at which bank the note is left, it is good law to show that *Rice* is bound by the usages of the bank.

5. Due notice was given to the defendant. Notice to an indorser must be given on the last day of grace, or on the following day. *Bayley on Bills*, 262 ; *Whitwell* v. *Johnson*, 17 *Mass. R.* 449. Notice put in the post-office on the day of payment, or the day after, is in season when the indorser lives out of the town. *Munn* v. *Baldwin*, 6 *Mass. R.* 316 ; *Whitwell* v. *Johnson*, 17 *Mass. R.* 449 ; *Shed* v. *Brett*, 1 *Pick.* 401. Notice according to the usages of the bank is sufficient, the indorser well knowing the usages. 4 *Mass. R.* 245 ; 6 *Mass. R.* 449 ; 3 *Pick.* 414 ; 9 *Pick.* 420 ; 2 *Fairf.* 489. Such notice was sent by the agent of the indorser, and therefore whether delivered or not is immaterial, the same as if sent by mail. 1 *Pick.* 401 ; 6 *Mass. R.* 316 ; *Bayley*, 275. It is sufficient, because it was the wish of *Rice*, or at least with his assent, as he knew the practice of the bank. 12 *Mass. R.* 172 ; *Bayley*, 208 ; 9 *Mass. R.* 155.

6. If the notice was not sufficient of itself to charge the indorser, it should have been left to the jury to infer a waiver of demand and notice. *Taunton Bank* v. *Richardson*, 5 *Pick.* 436 ; *Fuller* v. *McDonald*, 8 *Greenl.* 213.

*Bradley*, for the defendant.

Where there is no controversy about the facts, and the testimony is such as will not fairly warrant the jury in presuming notice from

the facts proved, it is a question of law to be decided by the Court, and the Court is bound to decide that there was not notice. *Bank U. S.* v. *Corcoran*, 2 *Peters*, 121 ; *Hussey* v. *Freeman*, 10 *Mass. R.* 84 ; *Whitwell* v. *Johnson*, 17 *Mass. R.* 449 ; *Bank of Columbia* v. *Lawrence*, 1 *Peters*, 578.

There was no evidence of a demand, as no notice was given to the maker of the note at which bank it was left. *North Bank* v. *Abbott*, 13 *Pick.* 465.

There was no notice whatever to the defendant, of the demand and non-payment, and nothing in the case showing due diligence to give notice. *Williams* v. *Bank of U. S.* 2 *Peters*, 101 ; *Lincoln and Ken. Bank* v. *Page*, 9 *Mass. R.* 155 ; 3 *Kent's Com.* 107 ; *Hartford Bank* v. *Stedman*, 3 *Conn. Rep.* 497. It is not pretended that there was any usage of the *Manufacturer's* bank not to send notices on the right day, and it does not appear, but that the notice was sent before the note was due, and indeed that seems most probable, if sent it was. There is no evidence even, that a notice was sent by any person. The evidence to prove a usage binding on any one is too loose and uncertain to prove any thing whatever. The only usage allowed in the cases goes merely to the substitution of a certain time, or a fixed place, for that required by law.

The case was continued for advisement, and the opinion of the Court was subsequently drawn up by

EMERY J. — This is an action against the defendant, as indorser of a note made by *Philbrook B. Abbott*, payable to *Daniel Eastman, Jr.*, or order, dated at *Portland, June* 1, 1836, for $416,37 in 60 days from date, at either of the banks in *Portland* or *Saco*, and interest after. It was indorsed by said *Eastman*, and by the defendant to the plaintiff. About ten days after the date, it was left by the plaintiff at the *Manufacturer's* Bank, for discount, but was not discounted, and the plaintiff then left it there for collection, where it remained till *November*, 1836. Upon the facts proved at the Court of Common Pleas, the Judge being of opinion, that the action was not maintainable, ordered and entered a nonsuit. Against that order and entry, the plaintiff excepted, and the case comes before us on those exceptions. Granting that the holder had

Thorn v. Rice.

done sufficient in leaving his note at the *Manufacturers'* Bank, which seems tacitly to be admitted, though in the exceptions, it does not directly appear to be a bank in *Saco*, and that what was done there amounted to what was equivalent to a demand on *Abbott*. *City Bank* v. *Cutter*, 3 *Pick*. 414; *Jones* v. *Fales*, 4 *Mass. R*. 245. The question remains, was there legal notice given to the indorser of the maker's failing to pay? It appears, "that a few days after the note became due, *Mr. Abbott* came to the bank, inquired for the note, and wanted to renew for part, and was told, that it was the property of the plaintiff.

In the afternoon on the last day of grace on said note, the cashier made out a written notice to the defendant, directed to him, of the non-payment of said note, and requesting payment of him, which notice he either gave to some individual living near said *Rice*, to give to him, or he put the same in the post-office, he knows not which; and he does not recollect by whom he sent, if sent by an individual, one or the other he did on the last day of grace, or the day following." "The defendant has transacted business at said bank for several years before that time, and has always been notified in that manner. And was well knowing of the practice of making demands, and giving notices at said bank. Many of the persons, if not all, who live in *Buxton* and *Hollis*, and who transact business at said bank, have expressed to the cashier, their wish to be notified by sending the demand or notice by some individual, down from their neighborhood, in preference to being sent them by mail, in order to save postage. The cashier did not recollect, whether *Abbott* or *Rice* ever expressed such wish, but that had been the practice of said bank in notifying said *Abbott* and *Rice*."

Wherever the indorser may have recourse to the maker, the indorser is entitled to strict notice. *Warder & al.* v. *Tucker*, 7 *Mass. R*. 449.

*C. J. Marshall* says, no principle is better settled in commercial transactions, than that the undertaking of the indorser is conditional. If due dilligence be used to obtain payment from the maker without success, and notice of non-payment be given to him in time, his undertaking becomes absolute, not otherwise. *Magruder* v. *The Union Bank of Georgetown*, 3 *Peters*, 91.

The meaning however of this, is not that it should in all cases be actual notice. Though if a notice actually came to the hand of the indorser in proper time, though the letter containing the notice was not properly directed, or sent by the most expeditious or direct route, it would be good. The fact of notice, and its reception in due time are the only matters material to the indorser of an unpaid note. The holder in legal estimation, gives this strict notice by performing his own duty, by sending notice by a messenger in proper time, or by putting a letter rightly directed to the defendant in the post-office, giving notice of the demand and non-payment by the maker on the last day of grace or the next day. This is legal diligence on the part of the holder, whether the letter come to hand in season or not. When all the facts are ascertained, diligence is a question of law. If the evidence is doubtful or contradictory, it is for the jury to decide.

The facts here come all from one witness. And it is attempted to hold the defendant by the proof that the usage of the bank as to the making demand, and giving notice, such as has been recited, was so well understood by the defendant that he must be presumed to have assented to it, and that he must be bound by it.

The very statement of a practice so loose in relation to *subjects* of such importance to the well being of a commercial community, cannot fail of exciting attention. The usages of banks upon this matter, which have been adjudicated upon, as having effect to bind its customers, are those as to *the time* in which demands or notices shall be made, *or places* at which they should be left by the consent or agreement of those interested. But it is going far beyond what we consider has been decided, to hold what has been done here as a compliance with the requisitions of law.

Delivering the letter of notice, to an individual living near, and how near not known, or how long he had been living near to the defendant, or what his habits of punctuality in delivering letters were, or whether he were friendly or unfriendly to the defendant, whether the defendant ever knew the individual selected, or would in any way adopt him as an agent, all alike unknown, is too uncertain a course, on which to place reliance, without proof that it was rightly left with or for the defendant. Whether too in fact the no-

tice was ever delivered to such an individual, and to whom it was delivered, if it was done, is not recollected by the witness.

If a messenger be selected by the holder of the note, or his agent, that messenger must give the notice personally, or leave it at the indorser's dwellinghouse, or place of business, unless a different place be appointed by the indorser for that purpose.

Had the notice been placed in the post-office in season, rightly directed to the defendant, as that is a mode of conveyance established by the laws of the land, it would have been sufficient. But it is entirely equivocal whether it was ever placed there. No legal excuse is proved.

Upon such evidence as was produced, we apprehend that the Court of Common Pleas was justified in ordering the nonsuit, and directing the entry as stated in the exceptions. *Smith* v. *Frye,* 14 *Maine Rep.* 457.

*Exceptions overruled.*

