CHARLES BARNARD & others *vs.* ISAAC CUSHING & others.

Where the payee of a note, at the time it was signed by the maker, and as a part of the same transaction, indorsed thereon a promise not to compel payment thereof, but to receive the amount when convenient for the maker to pay it, it was held that the indorsement must be taken as part of the instrument, and that the payee could never maintain an action thereon.

THE plaintiffs' declaration averred, that on the 26th day of June 1838, the defendants, by their promissory note of that date, for value received, promised the plaintiffs to pay them $ 94, on demand, with interest. Such a note was given to the plaintiffs, by the defendants, but there was this indorsement thereon : "We agree not to compel payment for the amount of this note, but to receive the same when convenient for the promisors to pay it. Barnard, Adams & Co." The signing of the note and the signing of the indorsement were made at the same time, and were parts of the same transaction. It was agreed by the parties, that if the action could be maintained upon the instrument as declared on, the plaintiffs should have judgment : Or if the declaration could be amended, so as to sustain an action on said instrument, (the defendants objecting to such amendment,) that then the declaration should be amended on such terms as the court should deem proper ; and that if the instrument were of itself sufficient evidence to sustain such amended declaration, the plaintiffs should have judgment ; otherwise, that the case should be sent to a jury : But if the said instrument would not sustain an action, under any circumstances, then that the plaintiffs should become nonsuit.

*Dehon*, for the plaintiffs.

*W. J. Hubbard & Watts*, for the defendants.

DEWEY, J. The plaintiffs insist that the agreement of the defendants is to be construed either, *first*, as an absolute and unconditional promise, to pay the sum of money therein named, on demand, and therefore not to be affected by any distinct collateral agreement not to enforce payment thereof, leaving the defendants to their cross action for any violation of such collateral agreement ; or, *secondly*, that if the whole instrument is to be

taken together, it constitutes a valid conditional promise to pay the sum named in the contract, when the makers are of suffi cient pecuniary ability to pay it.

Is the stipulation, written on the back of the note, to be taken as a part of the contract between these parties, and to be referred to as such, in determining the legal effect of the promise made by the defendants ? That a written stipulation, not contained in the body of the instrument, may be taken to be a part of the contract, and qualify what otherwise would be an absolute promise, has been held in numerous cases. They have usually been cases of stipulations, written on the face of the paper which contains the principal agreement, but distinct from it. Several adjudicated cases, however, present the question, as raised in the present instance, in reference to stipulations written on the back of the paper. Of the first class, are the cases of *Jones v. Fales,* 4 Mass. 245, where the words " foreign bills," written underneath a promissory note, were held to constitute a part of the agreement ; *Springfield Bank* v. *Merrick,* 14 Mass. 322, where the word " facilities " written on the margin of a note was held to constitute a part of the note ; *Heywood* v. *Perrin,* 10 Pick. 228, where at the bottom of the note was written a memorandum of the following purport, " one half to be paid in twelve months, and the balance in twenty-four months ; " and this was held to qualify and govern the promise in the body of the note. In the case of *Makepeace in review* v. *Harvard College,* 10 Pick. 298, the question arose upon a note promising to pay the plaintiffs a sum of money therein named on demand. At the foot of the note was a memorandum containing an agreement, that if Makepeace should convey to the payees certain parcels of real estate, a certain specified sum should be indorsed on the note ; and the memorandum was taken to constitute a part of the contract. And in *Wheelock* v. *Freeman,* 13 Pick. 168, where a memorandum was added to a note payable on demand, stating a different time and manner of payment, the like rule was applied ; the court holding " that any words written on an instrument, which qualify and restrain its operation, constitute a part of the contract."

But there are other cases also, where the question arose upon the effect of a written stipulation upon the back of the instrument. Thus in *Stocking* v. *Fairchild,* 5 Pick. 181, which was a case of a deed of conveyance of land, absolute in its terms, but on the back of the deed there was written a condition in the usual form of a condition of a mortgage, it was held that the written condition was a part of the deed, and made the conveyance a mortgage. In coming to this result, it was of course assumed that the condition on the back was a part of the original transaction, and existed at the time of the signature. In *Leeds & others* v. *Lancashire,* 2 Campb. 205, an instrument in the form of a promissory note was made for payment of £ 200, on demand, and on the back thereof was written, " the within note is taken as security of all such balances as J. M. may owe .T. Leeds & Co., not extending further than £ 200 ; but this note to be in force for six months, and no money liable to be called for sooner in any case." It was held by Lord Ellenborough, that as between the parties to the instrument, it was only an agreement, and not a promissory note ; and that as to the plaintiffs, the indorsement must be incorporated with the body of the note, and that they could treat it only as a guaranty. *Hartley* v. *Wilkinson,* 4 Campb. 127, was an action by the indorsee against the makers of a promissory note given for the price of " a quantity of fir belonging to D. Hartley, and lying in the parish of F." Upon the note was this indorsement : " This note is given on condition, that if any dispute shall arise between Lady Wray and D. Hartley, respecting the sale of the within mentioned fir, then the note to be void." It was shown that the indorsement was made before the instrument was signed by the defendants, and thereupon Lord Ellenborough held that the indorsement must be taken to be a part of the note, and that as the note was to be void on any dispute arising, &c. the payment was conditional only, and the instrument was not a promissory note within the statute of Anne. The plaintiff was nonsuited, and the court of King's Bench afterwards refused a rule to show cause why the nonsuit should not be set aside. 4 M. & S. 25.

I have referred to the above cases more particularly than would have been thought necessary, but for the fact that a different doctrine is supposed to have prevailed, to some extent at least, in the courts of the State of New York, as found in *Sanders* v. *Bacon*, 8 Johns. 485, and *Tappan* v. *Ely*, 15 Wend. 362, cited by the plaintiffs' counsel.

We think that the true rule is, that the construction is to be upon the whole instrument, as well that which is written upon the back of the note, as that upon the face.

The further inquiry then is, whether, taking the entire stipulation, the defendants have made a promise of such legal validity and effect, that it may be enforced against them by an action at law. It is true, that in a case cited in Bayley on Bills, (2d Amer. ed.) 6, from 2 Atk. 32, it is said to have been decided, in a case arising upon a promise of the following tenor — " Borrowed of J. S. £50 which I promise *never* to pay " — that the court would reject the word " never," and hold the party liable to pay. In one of the notices of this case, it is stated that the learned judge assigned as the reason for the decision, that a party shall never say, " I am a cheat and have defrauded." In another, it is put more directly upon the ground that there was a good foundation for an assumpsit ; there being a lending on the one side, and a borrowing on the other, as admitted by the signer of the note. Now whether the giving such a note was a cheat and a fraud might depend upon all the circumstances of the case. If given for a valuable consideration, and as. and for a good and available legal promise, it might well be said to be a fraudulent act ; but if its literal import and legal effect were fully understood by both parties, it is difficult to perceive how it would be obnoxious to such a charge, or whence the court would derive its authority for changing the nature and effect of the contract. I. suppose the rejection of words, found in an instrument, rendering nugatory the provisions of such instrument, rests principally upon the ground that the parties, when they execute an instrument purporting to be a contract, must have intended that it should have some validity and effect ; and in the case put, the word *never* rendered the promise useless to every intent.

20 *

It did not leave even the evidence of the slightest honorary obligation to make the payment, but excluded both legal and honorary liability ; and in this respect, it may be distinguished from the case at bar.

The doctrine contended for by the plaintiffs is, that taking the whole language of the instrument, it imports a conditional promise, a promise to pay whenever the makers of the note have the pecuniary ability to pay it, and that it is competent for the plaintiffs, upon proper proof of such pecuniary ability, to maintain an action at law to enforce the payment thereof. But we think this contract will not bear the proposed construction. It was easy to have made a conditional contract of the nature suggested. Words direct, simple and obviously manifesting that purpose, would naturally have occurred to the mind of the parties, if such had been their object. Had they introduced into the contract proper and apt words to raise a promise to pay when the makers of the note should possess the ability to do so, it would have been a valid promise, which might have been enforced upon the happening of the stipulated condition. But the promise actually made was not that the makers would pay when of sufficient pecuniary ability, but at their convenience, and was accompanied with the direct stipulation, that their action was not to be hastened by any compulsory proceedings by the payees ; the language of the contract being " we agree not to compel payment for the amount of this note." These stipulations leave the contract without the essential elements of a legal obligation capable of being enforced by a suit at law.

It was further urged, that it was at least competent for the plaintiff to maintain an action upon this note, and reduce the demand to a judgment — although no execution could issue thereon — for the purpose of protecting the demand against the operation of the statute of limitations. This view is certainly somewhat novel ; the cases of suits proceeding to a judgment, without the authority to issue execution thereon, being very limited in their character, and such as are specially authorized by statute. But further ; it is very obvious that if there be here no legal contract which can ever be enforced compulsorily, the

statute of limitations, as a defence, would always be substantially merged in the general defence of the invalidity of the contract: Or, taking the other view of the case, and treating it as a promise to pay when of sufficient ability, the statute would not begin to run, till such ability existed.

The result is, that no action can be maintained upon this promise. Taking it with all its stipulations, it is only an honorary engagement, a memorandum by which the promisees might remind the promisors, by an instrument under their own hands, of an honorary obligation outstanding against them.

*Plaintiffs nonsuit.*