Mr. Chief Justice Johnson delivered the opinion of the Court. The record sent up in this case raises two distinct questions for our consideration. The first involves the legal sufficiency of those counts which are based upon the acceptance endorsed upon the order considered in the light of bills of exchange; and the second relates to those which are framed upon a supposed special contract. The declaration contains ten counts, and exhibits two separate orders upon the defendant in favor of the plaintiff and drawn by a certain’ George B. Hayden. The orders do not differ in any essential particular except as to date and amount. They are both addressed to the defendant in the character of Treasurer of the State of Arkansas, and request him to pay at a future time the respective sums, therein specified, to the plaintiff in State Scrip or Treasury Warrants, out of any moneys in his hands due him (Hayden,) for printing the Acts and Journals of the State, and are each signed by Hayden, as printer to the State. This court, in the case of Gwinn v. Roberts, (3 Ark. Rep. 72,) said, “The statute declares that the term ‘Bill of Exchange,’ as used in. this; act, Shall be so construed as to- include, all- drafts, or orders drawn by one.person on another for the payment of a sum of money specified therein. From the least observation, it will be perceived that the writing in question is neither a bill of. exchange, draft, or order for the payment of a’ sum of money specified therein, because the drawee is- not requested thereby to pay any sum of money whatever to the payee or any other person. The defendant simply requests Mr. Sangrain to let Mr. Chambers have merchandize in his store to- the value of $32 38, and to charge him, Roberts, with the amount, which was evidently the understanding of the parties, and such is the operation and legal construction of the writing, which cannot be regarded either as a bond, bill, promissory note, draft or order, within the operation of the law merchant, nor any statutory provision whatever in force in this State.” This court, in the case of Hawkins v. Watkins, (5 Ark. Rep. 483-4,) also said that “Bills of exchange derived' their negotiable quality from the usages and well established principles of the mercantile law. The negotiability of bills of exchange were confinend to such instruments in that form as were drawn for the direct payment of money; and such is the definition of the term under our statute, p. 151, sec. 13, Rev. Stat. By the common law, therefore, this is not a bill of exchange. Ch. on Bills 152. Rex v. Wilson, Bailey 11. Jones v. Fales, 4 Mass. 245. Liber v. Goodrich, 5 Cowen 186. McCormick v. Trotter, 10 Serg. & Rawle 94. Lunge v. Kohne, 1 M. C. 115, and 3 Ark. Rep. 73, Gwinn v. Roberts. And although bank notes are, for many purposes, equivalent to money, yet a bill or note for the payment of them is not deemed a bill of exchange at common law or a promissory note within the 3 and 4 Ann., chap. 9, and consequently not assignable. Many peculiar and legal qualities belonged to such instruments which distinguished them from choses in action. They were assignable • by endorsement so far as to transfer the legal title and property in them and. enable the en-dorsee to sue upon them in his own name. From their commercial character, they imported a consideration, 2 Bl. Com., and they raised against the parties to them a legal liability and were sued on as the foundation of an action. These qualities do not belong to the instrument here sued on unless it is aided by the statute upon assignments before referred to. A note for property would be assignable because the payee has a right of action on the privity of contract; but could the payee of this bill have sued Hawkins on his acceptance in this form of action? We think not. The liability of an acceptor is one raised by law applicable to mercantile instruments, and he was never liable as such except upon those instruments. No right of action lay in favor of any party against an acceptor upon the bill itself in any other case; and inasmuch as the statue did not intend to give a right to the original payee, where none in this form subsisted before, it is clear that by the endorsement the assignee acquired no new or better right. We are therefore clear that the instrument in question was never assignable as a bill of exchange at common law, nor embraced within the provisions of our statute.” The instrument sued upon in that case was in these words, “You will please pay to the order of Col. L. C. Howell four hundred dollars in Arkansas money of the Fayetteville Branch, it being the balance of the five hundred dollar bill I sent you to exchange, your particular attention to this will greatly oblige.” This draft was drawn by L. W. Wallace upon Hawkins, and by him accepted generally. Howell assigned the draft to Watkins, who declared upon it by a simple count in the ordinary form on bills of exchange. The judgment of the circuit court was reversed in that case and sent back, when the plaintiff (Watkins) filed an amended declaration, and in which he counted upon the original consideration and made an exhibit of the order as evidence to be used in the cause, whereupon he obtained a judgment, which was afterwards affirmed by this court. (See 1 Eng. Rep. 291, Hawkins v. Watkins.) The case of Coyle’s executrix v. Satterwhite’s adm’rs, p. 124, 5, and reported in 4 Monroe, is directly in point. The declaration was in assumpsit, and set out a demand created by the sale and assignment of a note by the plaintiff’s intestate to the testator of the defendant, for the price of which said testator owed a balance of $400, due in hemp yarn at eight cents per pound, payable on demand. It then set forth that the plaintiff (or rather his predecessor in administration, the then plaintiff being an administrator de bonis non) demanded the yarn, and that the testator of defendants drew an order for it on Thomas H. Pindell, of the following tenor: “Thomas H. Pindell, sir: Please to pay to the executors of William Satterwhite, dec’d, four hundred dollars in yarn, at eight cents per pound, and this shall be deemed your sufficient receipt for the same, agreeably to the contract between you and myself. Lexington, Sept. 10, 1814. C. Coyle.” That the representative of Satterwhite presented this order and Pin-dell would not accept or pay it, of which Coyle had notice; and that Pindell had no funds of the drawer, and that Coyle still refused to pay the yarn. The court in delivering their opinion, said ‘<Upon the trial the principal questions which seem to have arisen, proceeded from the parties’ treating this order as a bill -of exchange. It was insisted that due diligence was not used in presenting it, in causing it to be presented and giving notice to the drawer, and that the evidence conduced to prove a reasonable expectation in Coyle that the bill would be honored; and therefore he was warranted in drawing it, and entitled to due diligence and notice. These same questions have been repeated in this court. On one palpable ground, we dismiss the whole of that part of the controversy. This writing is not a bill of exchange. It does not come within the provisions of the law merchant, and none of its doctrines can be applied to it. It is too well settled to need the citation of authority, that it is essential to a bill of exchange that it should bo drawn for money, and all drafts or orders drawn for other commodities operate only as an authority to receive the contents, and the holder of them is not bound to apply either the speed or the formalities required in conducting a bill of exchange, and when they sue must resort to the original cause of action; and such was the case of this order. In this view, this controversy is brought down to one of great plainness and no difficulty. The declaration is based on the original contract and consideration and demand arising by virtue thereof. So far as it sets out this writing, it can only be considered as showing a good and valid demand of the yarn, and' not as taking the Order for the base of the action. The evidence concurred to show the original contract and the use made of the draft, established a clear but unsuccessful demand of the yarn.”' The judgment in that case was therefore affirmed. The same doctrine as to what is requisite to constitute a bill of exchangers also laid down by the same court in the case of Breckenridge v. Ralls, p. 534, and Jones v. Overstreet, p. 549, of the same volume. In Chitty on Bills,p. 596, he says, “It is here proper to observe that whenever the bill or note is not declared upon, it is not adduced in evidence as an instrument carrying with it the privileges it would otherwise be entitled to in respect of its bearing internal evidence of a consideration, but it is merely used as a piece of paper or writing to found an inference only in support of the money counts, which inference may be rebutted and destroyed by contradictory evidence on the part of the defendant, in which case the jury must draw from the whole of the evidence the conclusion of fact, whether or not so much money was lent, paid, or had and received, or that an account was stated.” It is perfectly clear, from the authorities referred to, as well as numerous others which might be cited, that the instrument declared upon in this case does not possess the requisites of a bill of exchange, as it was not drawn for money, and that consequently the action based upon it cannot be maintained. The plaintiff in framing Ms declaration,has not thought proper to count upon the original contract or cause of action as between the drawer and drawee of the supposed draft, but on the contrary has elected to declare as upon a special contract, which, as he alleges, was entered into between himself and the defendant. The substance of this special contract is that in consideration that he would purchase the scrip or treasury warrants from Hayden, he (the defendant) promised that he would deliver them to him at a particular time therein specified. The question here presented is whether, admitting all this to be true in point of fact, it is suck a contract as the defendant is under any legal obligation to perform. The indispensable requisites of all valid contracts are, first, that they should be made by persons having a legal capacity to contract: secondly, that inducement or motive of the contracting parties, called the consideration, should be legal: thirdly, that they should be made without force or fraud, freely and voluntarily: fourthly, the act performed or contracted to be performed by it, must be such as the law permits. (See Law Summary by Cline, p. 19 and 20.) Every contract the consideration to which is tainted with illegality, is void; and as the consideration of a contract is two-fold, moving from either party to the other, it follows that every agreement to do an illegal act is invalid, the act being the consideration on one side. A contract may be illegal, because it contravenes the principles of the common law, or the special requisitions of a statute. The former illegality exists whenever the consideration is founded upon a transaction which violates public policy or morality; as, a contract to commit, conceal or compound a crime, a contract for illicit co-habitation, or a contract in fraud of the rights and interests of third persons. The illegality created by statute, exists when the act is either expressly prohibited, or where the prohibition is implied from the nature and objects of the statute. (See Story on Contracts, p. 87.) The 24th sec., chap. 23, of the Digest, provides that the Treasurer shall disburse the public moneys upon warrants drawn upon the Treasury according to law and not otherwise, and the 29th sec. of the same chapter, declares that where there may not be sufficient par funds in the Treasury to pay all legal demands upon the State, it shall be the duty of the Treasurer, on application of the claimant to issue to him a treasury warrant for the amount due bearing no interest. It is clear from these provisions of the statute, that the Treasurer is authorized to pay out the money or to issue his warrants, in case the money is not in the Treasury to the individual who presents, him the Auditor’s warrant, and to him only. That is his only authority to paythe one or to issue and deliver the other, and if he does otherwise, he necessarily acts in direct violation of, and in defiance of the express prohibition of the statute. True it is that the declaration alleges that he had in his hands and under his control a sufficiency of the scrip of Hayden to have discharged the claim of the plaintiff. But can it be inferred from this allegation, that Hayden had previously presented his Auditor’s warrant, and actually drawn the scrip, and that he had af-terwards returned it to the defendant, and left it in his hands as a private individual. This cannot be the legitimate construction of the contract as disclosed by the declaration. The Treasurer stipulated before the scrip or warrants became due, that when they should fall due and become payable to Hayden, that he would not deliver them to him, but that he would withhold them from him and deliver them over to the plaintiff. This is the substance and legal effect of the undertaking on the part of the defendant, and this he most clearly could not do without a plain and palpable violation of the statute, and consequently, under the authorities, he could not be compelled to perform his promise. To tolerate such conduct on the part of a mere disbursing agent, would be to defeat the very object of the statute. (See McMeechen v. The State, 4 Eng. Rep. 553.) It is clear therefore that, even upon the supposition that the special contract thus set up and relied on, is literally true in point of fact; yet it discloses no such cause of action as can be enforced in law, and that consequently the demurrer was rightfully sustained. The judgment of the circuit court is consequently in all things affirmed.