## THOMPSON *vs.* SLOAN and others.

A note for the payment of money, made, negotiated and payable *here*, in *Canada money* is not a *negotiable note* within the meaning of the statute relative to bills of exchange and promissory notes, and consequently an action upon it in the name of an *endorsee* cannot be sustained.

Evidence of the meaning of the words *Canada money*, at the place where the note was made, is admissible.

The doctrine of *patent* and *latent* ambiguities considered.

THIS was an action of *assumpsit*, tried at the Erie circuit, in January, 1839, before the Hon. NATHAN DAYTON, one of the circuit judges.

The suit was brought on a note made and dated at Buffalo, in this state, on the 8th July, 1836, for $2500, payable twelve months after date, at the Commercial Bank in Buffalo, in *Canada money*. The note was *made* by *James Sloan* and *John Wilkeson*, payable to the order of Johnson, Hodge & Co., which firm was composed of *E. Johnson P. Hodge* and *M. F. Johnson;* by the latter of whom the note was endorsed in the name of the firm.

The suit was brought against the *makers* and *endorsers* jointly.

[ *72 ] The declaration contained a special count upon the note, and *also the common money counts. After proving the signatures of the defendants, the protest of the note and notice to the endorsers, the plaintiff's counsel offered to read the note in evidence to which the defendant's counsel objected, insisting, that being payable in *Canada money*, it was not *negotiable ;* that *Canada money* meant *bills of the Canada banks*. The plaintiff thereupon offered to prove that at the time of the making of the note, *Sloan* and *Wilkeson*, the makers thereof, desired to have it drawn payable in *Canada bank bills*, but that he objected, and insisted that it should be made payable in *Canada money ;* which testimony was objected to, and rejected. The plaintiff thereupon, under a written consent of the defendants, read in evidence a copy of an act of the provincial parliament of Upper Canada, passed 20th April, 1836, fixing the weight and rate of certain gold and silver coins, and declaring that the same should pass current and be deemed a legal tender in the province, in payment of all debts and demands ; as thus : " The British *guinea* weighing five penny weights nine and a half grains, Troy, at one pound five shillings and six pence ; the British *sovereign*, weighing, &c. at, &c. ; the *Eagle* of the United States of America, coined before, &c. weighing, &c. at, &c. ; the Eagle of, &c. coined since, &c. weighing, &c. at, &c.; the British *crown* at six shillings ; the Spanish milled *dollar* at, &c. ; the dollar of the United States of America at, &c.; the Mexican dollar at," &c., and after reading the same, rested. The counsel for the defendant then offered to prove the meaning of the words *Canada money*, as generally understood at Buffalo by persons in trade there ; which evidence was objected to by the plaintiff's counsel, but the objection was

overruled by the judge, and the defendants thereupon called several witnesses, who proved that *Canada money* was understood at Buffalo to mean *bills of the Canada banks*. Upon which evidence the judge ordered a nonsuit to be entered. The plaintiff asks for a new trial.

*M. Fillmore*, for the plaintiff, insisted, that the judge erred in receiving *parol* proof of the meaning of the words *Canada \*money ;* they are English words, well understood and not requiring explanation. As [ \*73 ] well might proof be received to show that the word *land*, or the word *heir*, had a peculiar meaning in a particular locality. *Money* means the *current coin* of a country, or its *equivalent*, bank notes at bar. It was shown on the trial that there was such a thing as *Canada money*, established by an act of the local legislature, consisting of gold and silver coins, and which money by that act was made a lawful tender in the payment of debts. Had the note been made payable in *Rhode Island money*, the court knowing that Rhode Island has not a currency distinct from the other states, would probably adjudge it bad, as importing on its face something less than money, or receive proof of the meaning of the parties ; but not so as to the note in question. Here it was proved that *Canada* had a currency, and that it consisted of gold and silver coins. Can it be doubted that a note payable in *English* or *French* money would be negotiable ?

If there be doubt as to the meaning of the words, a *patent* and not a *latent* ambiguity is presented, and it was the province of the judge to give them their proper construction, and not seek for explanation in parol proof. Should the ambiguity however be considered *latent*, then the judge erred in rejecting the evidence offered by the plaintiff.

*A. Taber & J. A. Spencer*, for the defendants.

*By the Court*, COWEN, J. A promissory note must, in order to come within the statute, like a bill of exchange, be payable in money only, in current specie ; *Bayl. on Bills*, 10 *Am. ed. of* 1836 ; *Ex parte Imeson*, 2 *Rose*, 225 ; or at least in what we can judicially notice as equivalent to money. Accordingly a note payable in bills of country banks, *Jones* v. *Fales*, 4 *Mass. R.* 245, in Pennsylvania or New-York paper currency, current in Pennsylvania or New-York, *Leiber* v. *Goodrich*, 5 *Cowen*, 186, in notes of the chartered banks of Pennsylvania, though the note was made and payable in the state of Pennsylvania, *M' Cormick* v. *Trotter*, 10 *Serg. & Rawle*, 94 ; see *Cook* v. *Satterlee*, 6 *Cowen*, 108; in \*paper [ \*74 ] medium, *Lange* v. *Kohne*, 1 *M' Cord*, 115 ; see *M' Clarin* v. *Nesbit*, 2 *Nott & M' Cord*, 519, or in cash or Bank of England notes, *ex parte Imeson*, before cited, 2 *Buck*, 1, *S. P.*, has been held without the statute.

The farthest we have gone is, to say that a note drawn and payable here, in New-York bills or specie, *Keith* v. *Jones*, 9 *Johns. R.* 120, or in bank notes current in the city of New-York, *Judah* v. *Harris*, 19 *Johns. R.* 144, is negotiable. In both cases the court went on the ground of a right to take judicial notice that New-York bills, and especially bank notes current in the city of New-York, were customarily considered and treated as equivalent to specie. And, in the last case, they said, though the defendant might have a right to pay with foreign bills current in the city, the note was still to be regarded as payable in current money.

Admitting that the note in question imports an obligation to pay in gold and silver, current in Canada, I do not see on what principle we can pronounce it to be payable in money, within the meaning of the rule. It is not pretended that coins current in Canada are, therefore, so in this state. As gold and silver they might readily be received ; and so might the coin of any foreign country, Germany or Russia, for instance ; but the creditor might, and in many cases doubtless would, refuse to receive them, because ignorant of their value. In law they are all collateral commodities, like ingots or diamonds, which, though they might be received, and be in fact equivalent to money, are yet but goods and chattels. A note payable in either would, therefore, be no more negotiable than if it were payable in cattle or other specific articles. The fact of Canada coins being current here is not, at any rate, so notorious that we can judicially notice them as a universally customary medium of payment in this state ; and if not, they are no more a part of our currency that Pennsylvania bank bills. *Leiber* v. *Goodrich*, before cited. Nor do I perceive in the case any proof, or offer to prove, that such coins were of universal currency.

This view of the case is not incompatible with a bill or note payable [ *75 ] in money of a foreign denomination, or any *other denomination, being negotiable, for it can be paid in our own coin of equivalent value, to which it is always reduced by a recovery. *Chit. on Bills*, 615, 616, *Am. ed. of* 1839. *Deberry* v. *Darnell*, 5 *Yerg.* 451. A note payable in pounds, shillings and pence, made in any country is but another mode of expressing the amount in dollars and cents ; and is so understood judicially. The course, therefore, in an action on such an instrument is to aver and prove the value of the sum expressed, in our own tenderable coin. It is payable in no other, *vid. Bayl. on Bills*, 23, *Am. ed. of* 1836, *and the cases there cited*, whereas on the note in question, Canada money, a specific article, would be a lawful tender ; Canada coppers, for aught I see, and, under our own decisions, bank bills, commonly current in Canada, would also be tenderable.

Nor is it necessary to deny, that had this note been made, endorsed, and payable in Canada, it would have been negotiable. It would then on its

face, have been payable in the current coin of the country where it was made. The objection is, that the note was made, endorsed and payable here, in a foreign commodity, which the payee was entitled to demand specifically; and to reject gold and silver current in the United States. It is of course the same thing under the extrinsic evidence offered by the plaintiff, and received by the judge. The Canadian statute merely proved what coins were current as *Canada money;* which could not be recognized as the money of this country. In the light of that proof, the note must be read as necessarily payable in Canada money, current by law in that province. It did not improve the case, without following it with some statute making that money, as such, current here; or, at least, showing that it was, in fact, so notoriously current among us, that we should be entitled to take judicial notice of the fact. The latter is the utmost, that, by our cases, the plaintiff could claim; though we have gone farther than the cases decided in any other state or country, so far as they were cited on the argument, or have come under my observation, except a case in Tennessee, *Deberry* v. *Darnell*, 5 *Yerger*, 451. The instrument was payable in N. Carolina notes *yet held negotiable. In *M'Cormick* v. *Trotter*, I fear we [ *76 ] were somewhat justly criticised for the high ground on which we had placed all our state bills in *Keith* v. *Jones*. At any rate, Mr. Justice Duncan very truly reminded us that N. Y. state bills had depreciated, in common with those of Pennsylvania. A remark, which he made as to the note in that case, which was payable in Pennsylvania bills, would, I apprehend, be nearly applicable to our own, at some stages of our currency, viz.: that " it was payable in more than 40 kinds of paper of different value."

The evidence offered, that the makers were desirous to draw the note payable in Canada bills, which the plaintiff refused, tended to prove no more than that the note was intended to be payable in Canadian current coin. It was, therefore, as we have seen, irrelevant, beside being, as I think, inadmissible, because it was direct independent evidence of intention, as explained by the parties at the very time of drawing the note. Every thing of this kind which the parties declared was merged by the written agreement. The legal effect of a written agreement can not be controlled by this kind of evidence. *Creery* v. *Holly*, 14 *Wendell*, 26. Nor, in general, can a patent ambiguity be obviated by it. *See Cowen & Hill's Notes to* 1 *Phil. Ev.* 1384, 1388, *et seq.* and cases there cited. I speak of the *confessions* or *declarations* of the parties, which go to show what they meant by the words used in the writing. I do not deny that in such a case, a resort may be had to collateral circumstances. *Per Bayley, J. in Smith* v. *Doe, ex dem. Earl of Jersey*, 2 *Brod. & Bing.* 553. 1 *Phil. Ev. Cowen & Hill's ed.* 546, *note* 957, *p.* 1399, *et seq. Peisch* v. *Dickson*, 1 *Mason*, 9, 11. The cases of *Cole* v. *Wendell*, 8 *Johns. R.* 116, and *Ely* v. *Adams*, 19 *id.* 313,

were mentioned to us on the argument. I much doubt whether the latter case can be understood as conflicting at all with the distinction I have mentioned. In the former, it was doubtful which of two subjects mentioned in the writing, the parties intended to refer to, and the judge at the circuit, received evidence of the form in which the plaintiff desired the contract should

[ *77 ] be written, and to which the defendant assented. It was written in *a different form, which made it ambiguous on its face. Yet the verdict was sustained on motion for a new trial, and an opinion expressed that the evidence was proper. The ambiguity, though patent, lay between *two objects only*, and the decision may be sustained by a class of authorities which make such cases an exception. *Vide Cowen and Hill's Notes to* 1 *Phil*. 1388, 1392. The ambiguity was not, in its own nature, unexplainable ; and the only difficulty is on the kind of proof. There was, however, as the court remarked, enough appearing on the face of the paper itself to remove the doubt. The case is sustainable on that ground, even if the cotemporaneous declarations were improperly received.

But in the case at bar, extrinsic evidence of the kind offered by the defendants was, I think, admissible to prove that *Canada money* meant, in general, mercantile understanding at Buffalo and in its vicinity, *Canadian bank bills*, and not specie, whether we regard the words used in the note as *prima facie* importing current Canadian coin, or as ambiguous on their face ; in other words, leaving it doubtful whether they meant current Canadian coin or bank notes. Such evidence was not necessary, if what I have said as to the legal effect of the words be correct, and was therefore irrelevant, and, in that view, inadmissible. But suppose I am mistaken in saying that this note was not negotiable as being payable in the legal money of the province, then it was competent to prove the customary meaning of the words. The cases are quite numerous, that though the meaning of a word be perfectly well settled in general language, yet if a secondary meaning has been affixed to it in commercial usage, in a certain region of country, or among certain classes of men, this may be shown ; and when the proof is clear, the use of the word in that region, or among those men, carries into the contract the signification thus established. The general rule is clear, and hardly calls for a quotation of books, *vid. Cowen & Hill's Notes to* 1 *Phil. Ev.* 1409, 1412, *and the cases there cited;* and if a word of known general signification may be thus qualified, it is difficult to perceive how, without a violation

[ *78 ] of the very principle on which this is allowed, we can refuse the same sort of *testimony to clear up a doubtful word. The latter would seem to be a less violent exception to the rule, which requires that language shall have an effect according to its general import.

It is supposed that a patent ambiguity is more stubborn than a direct and clear expression. This conclusion is sought to be derived from the famous

rule of Lord Bacon, which declares patent ambiguities unexplainable. I had occasion in a late case, *Fish* v. *Hubbard's adm'rs*, 21 *Wendell*, 651, to show that the rule in its general sense had seldom, if ever, been acted upon, and never should be so applied as to preclude collateral circumstances in explanation of doubtful words or phrases, which, when explained, are found to be significant and operative of themselves. This was also sufficiently shown in *Colpoys* v. *Colpoys*, 1 *Jacob*, 451. Usage is one of the most common circumstances receivable for the purpose of such explanation. It is from this that we derive our general knowledge of language, which knowledge cannot be made the only test, without assuming judges and jurors to be familiar with words and phrases applicable to every employment of life in different sections of the country, and indeed in foreign countries.

It is obviously as necessary to ascertain the provincial meaning of words, through witnesses who are acquainted with their signification, as to translate a foreign language through a sworn interpreter. Abbreviations of words are often used, generally of known import; but sometimes entirely ambiguous, not to say absolutely obscure. Such was the word *mod* in the will of Nollekens, the sculptor. But its meaning was collected through the medium of witnesses skilled in the trade of the testator, and from proof of the surrounding circumstances. In that case, too, direct evidence of intention, viz. the declarations of the testator of what he intended to bequeath, and to whom, made by him to his female attendant in his sickness, was overruled. *Goblet* v. *Beechey*, 3 *Sim.* 24, more fully reported in *Wigr. on Extr. Ev.* 139, *et seq.*; and see *Hite* v. *The State*, 9 *Yerg.* 357, 381.

The motion to set aside the nonsuit, and for a new trial, is denied.