LEVI BUTLER, Respondent, *vs.* PARKER PAINE, Appellant.

APPEAL FROM THE DISTRICT COURT OF HENNEPIN COUNTY.

A draft payable in " currency " is, in legal acceptation, payable in money, and, consequently negotiable.

Parol evidence of an agreement that the draft should be paid in the currency of Illinois and Wisconsin, at a discount for gold, cannot be received to vary or contradict the terms of the note.

If the word " currency " has any signification among merchants and bankers other than its common import, by virtue of a usage or custom, a party seeking the advantage of such usage or custom, must allege and prove it.

Questions of granting and refusing amendments to pleadings, are discretionary, and will not be reviewed, except in case or abuse.

## Points and Authorities of Appellant.

I. A draft or bill must be payable in money only; if payable in currency it is not negotiable, and cannot be transferred by endorsement. *Edwards on Bills and Prom. Notes*, 134-5.

The only exception to the English rule is where the draft is payable in what the Court is bound to take judicial notice of, as equivalent to money. 9 *John*, 120; 19 *John*, 144; 23 *Wend.*, 71; 7 *Hill*, 425; 6 *Id.*, 359; 5 *Cow.*, 186; 10 *Serg. & Rawle*, 94; 4 *Watts*, 400; 2 *McLean*, 10; 3 *McLean*, 106 ; 5 *Pike*, 481; 7 *Mo.*, 595; 16 *Ohio*, 5; 1 *Texas*, 13, 246; 1 *McCord*, 115; 9 *Missouri*, 697.

II. The instrument offered in evidence was a bank check, and not a draft or bill. Bank checks are not designed for general circulation, and while the payee of a check has a reasonbale time in which to present for payment, the same privilege does not extend to his endorsees; and no matter how many hands it may pass through, it must be presented in such time as would have been reasonable for the payee, and no greater time is allowed. The evidence showing that the draft was drawn on the 13th May, and presented on the 5th June following, and that four days was a reasonable time for the

mails between St. Paul and Chicago.   The Court should have instructed the jury that the time was  unreasonable, and that it was incumbent upon the holder to show that the drawer was not prejudiced by the delay.   *Story on Prom. Notes, p.* 654-5, *sec.* 496-7; *Chittg on Bills, p.* 387, 421; *Story on Prom. Notes, p.* 656, *sec.* 498, 492; *Little vs. Phœnix Bank;* 2 *Hill,* 425; 4 *Kent's Com., p.* 88; 3 *John, Cases* 5, *Ib.,*  259.

III.   The Court below erred in refusing the evidence of the Defendant's answer, and in refusing to allow the amendments offered.   *See cases cited in first point;* 1 *Greenl. Ev., sec.* 277, *p.* 365-6; 23 *Wend.,* 76-8; *Edwards on Bills. p.* 137; 21 *Wend.,* 651; 1 *Jacob,* 451; 2 *Hill,* 425; 3 *Barn. & Adolph,* 728; 8 *Met.,* 576-7.

Points and Authorities for Respondent.

I.—The Defendant is estopped by his answer from insisting that the instrument was not a draft, and not negotiable. Both parties in their pleadings treat it as a negotiable instrument.

*a.* The complaint must be liberally construed, and if it uses a term susceptible of two meanings, one of which will uphold a cause of action, and the other not, that construction must be given to it which will support the pleading. *Pub. Stat., sec.* 75, *p.* 542; *Allen vs. Patterson,* 3 *Selden,* 476; *Huey vs. Pinney,* 5 *Minn. R.,* 322.

*b.* The word "currency" is defined by Webster thus: "That which is current or in circulation as a medium of trade. The word may be applied to coins or bills issued by authority." *See American Encyclopædia, vol.* 3, "*Circulating Medium*"; also, *Burrill's Law Dic., under head of* "*Money*"; 7th ed., *vol.* 1, *Bouvier's Law Dic.,* 358, "*Currency.*"

Its strict legal meaning is, "That which is authorized by law to circulate as money," "money authorized by law."

The following phrases have been held equivalent to "money," and "gold and silver coin," viz., "Arkansas money," 1 *Eng. R.,* 255; "Currency of this State," (Missouri), *Cockerill vs. Kilpatrick,* 9 *Mis.,* 697; "Currency of the State of Mississippi", *Mitchell vs. Howell, Smedes & Marsh,* 361; "good current money of the State," *Graham vs. Adams,* 5 *Pike,*

261; " Funds current in the city of New York," *Laeey vs. Holbrook*, 4 *Ala.*, 88. Certainly the word " Currency " is more applicable to a gold and silver circulation.

II.—In case there is a doubt as to the meaning the parties intended to attach to the words "in currency" that meaning must be given to it which is in consonance with the rest of the instrument. The whole tenor of the instrument shows that the parties intended it as a negotiable draft. Besides it must be construed most strongly against the promissor. Hence, if payment in coin or legal specie funds is requisite to the negotiability of an instrument, and the term " currency " may be applied to such money, although it is not its most ordinary meaning, it must be so construed in this case. 2 *Pars. Con., pp.* 16, 17, 18 *and* 19; *Jones vs. Fales*, 4 *Mass.*, 253.

III.—The most favorable construction Defendant can claim in this case is, that " currency" imports such *current* bank bills or other paper money, as are authorized by law to circulate as and for money in the place where this draft was payable—such as the courts will take notice of as equivalent to money.

Wharton defines " currency" to mean " Bank notes or other paper money issued by authority, and which are continually passing as and for coin." *Wharton's Law Dic., p.* 236.

A draft or note payable in such currency is payable in money and negotiable within the meaning of our laws, which are similar to the United States statutes upon the same subject. *Chap.* 20, *Pub. Stat. Minn., p.* 375; *title* 2, *chap.* 4, *part* 2, *U.S. Rev. Stat.*, 4*th ed., p.* 177; *Keith vs. Jones*, 9 *J. R.*, 120; *Judah vs. Harris*, 19 *J. R.*, 144, *and cases there cited.* These cases are cited as authority in 5 *Cow. Rep.*, 187; 23 *Wend. R.*, 74, 75; 2 *Hill.* 425; 7 *Hill.*, 359; *Sutherland vs. Creighton*, 15 *Ohio*, 48; *White vs. Richmond*, 16 *Ohio*, 5; *Besancon vs. Shirley*, 9 *Smedes & Marshall*, 457; 5 *Yerger*, 451; 1 *Eng.*, 255; 3 *id.*, 138; 1 *Texas R.*, 13, 246, 503; 4 *Alab.*, 140, 88.

The contrary decisions are most, if not all, based upon the idea that the funds in which the note or draft was made pay-

able, were depreciated and at a discount, and hence not equivalent to cash or money.

IV.—The evidence of the Defendant to prove by parol the contemporaneous understanding of the parties to the bill as to the meaning of the term "currency" was clearly incompetent and properly excluded under the pleadings (*folio* 10 *of case.*)

So the Defendant's offer (*folio* 11 *of case*) to prove his whole answer was objectionable for the same reason, and for the further reason that it was not sufficiently specific. It evidently embraced objectionable matter.

V.—The refusal of the Court to allow an amendment of the answer on the trial was a matter in its discretion, and not the subject of review.

VI.—The charge of the Court in regard to the time when the draft should have been presented was in accordance with the request of the Defendant, and not excepted to by him, and hence he can take no exception to it now.

VAN ETTEN & OFFICER, Counsel for Appellant.

CORNELL & MANN, Counsel for Respondent.

*By the Court.*—FLANDRAU, J.—The instrument upon which this action is commenced is in the following words:

" THREE HUNDRED DOLLARS IN CURRENCY.

" Banking Exchange and Collecting office of
$300.              Parker Paine & Berry,
                " St. Paul, Minnesota.        18—.

" Pay to the order of Heinrich Holtz, Esq., three hundred (currency) dollars.

            " Your obedient servant,
" Marine Bank, Chicago."          " PARKER PAINE."

It was indorsed with the following names: " Heinrich Holtz, C. Lewis, L. Butler."

The first question to determine is, whether this is a negotiable instrument under the law-merchant. The statutes of our State leave notes and bills to be construed by the common law applicable to such paper, no material changes having

been made. *Comp. Stats.*, 375. It will not not be disputed that a negotiable bill or note must be payable in money. The whole question, therefore upon this bill arises upon the word " currency." Considerable authority exists upon paper of this character. In the case of *Farwell vs. Kennett*, 7 *Missouri*, 595, a bill payable in " *currency*" was held not to be a bill of exchange. A note payable in " current bank notes," is not negotioable. *Gray vs. Donahoe*, 4 *Watts*, 400. A note payable in " notes of the chartered banks of Pennsylvania," is not negotiable. *McCormick vs. Trotter*, 10 *Serg. & Rawle*, 94. A check drawn in New York upon a bank in Mississippi, payable in " current bank notes," is not negotiable. *Little vs. The Phœnix Bank* 7 *Hill* 359. This case affirms the case reported in 2 *Hill*, 425. A note made, negotiated, and payable in New York, in " Canada money" is not negotiable. *Thompson vs. Sloan*, 23 *Wend.*, 71. There are other cases of similar import in the books. Various reasons are assigned by the courts for these decisions; but generally they hold that the terms used do not signifymoney.

On the other hand, we find in the case of *Cockerill vs. Kirkpatrick*, 9 *Missouri*, 697, it was held a note payable in " the currency of this State," is payable in gold or silver coin or in the notes of the Bank of Missouri, and a note payable " in the current money of Missouri," is payable in gold or silver coin alone. In *Judah vs. Harris*, 19 *John. R.*, 144, it was held that a note payable " in bank notes, current in the city of New York," is a negotiable note. A note payable to B., or bearer, in " York State bills or specie," is a negotiable note. *Keith vs. Jones*, 9 *John. R.*, 120. A note or bond payable " in good current money of the State," is payable in gold or silver." *Graham vs. Adams*, 5 *Pike*, *Arkansas R.* 261. In this case, the Court put the question upon the word " good," intimating that without it the words would not mean gold or silver, holding that the words " good, current money of the State," are distinguishable from " currency of this State," " current bank paper of the State," or " current notes of the State." *See also*, 1 *Eng. Ark. R.*, 255; 4 *Ala.* 88.

The word " currency" is defined in *Bouvier's Law Dic-*

*tionary* to mean " the money which passes, at a fixed value, from hand to hand ; money which is authorized by law."

We are of the opinion that this bill upon its face, is payable in money, and therefore negotiable.

The Court properly overruled all attempts to show by parol that the parties agreed that the bill should be payable in any other manner than that indicated by its terms, or, in other words, to contradict or vary the terms of the instrument by parol.

The counsel for the Defendant, seeing his difficulty, (1 *Chitty's Pl.*, 217,) then moved for leave to amend his answer by pleading a mercantile usage or custom which gave to the word " currency," when used in drafts of this character, a signification different from that which it commonly and legally imports, to wit, that it meant "such bank bills as were current at the place of payment." The Court refused the amendment and an exception was taken.

We have so often declined to review questions of this nature, on the ground that the matter rested in the discretion of the Court, that we do not deem it necessary to refer particularly to the decided cases. We think it would have been of very doubtful propriety to have allowed the amendment at that late stage of the trial, under the circumstances as they appear in the record.

The Court left the question of delay in the presentment of the draft for payment, to the jury, at the request of the Defendant, and instructed them that it was " incumbent upon the payee and endorsee to use reasonable diligence in presenting a draft for payment, and an unreasonable delay in such presentment will discharge the maker." The Defendant has no right to complain of this disposition of the question by the Court. He asked it and took no exception to it.

We find no error in the proceedings of the Court below, and affirm the order denying a new trial.

---

MOTION FOR RE-ARGUMENT.

*By the Court.*—FLANDRAU, J.—At the last term of this

Court this case was argued, and our opinion has been since filed. The question decided was, that a draft drawn in this State, upon a bank in Illinois, and made payable in "currency," was a negotiable instrument within the statute. The decision was based upon the signification of the word "currency," as used in the instrument, which we held to be synonymous with money. An examination was had by this Court of the various cases cited by counsel, and other authorities. Before the decision was rendered, the various questions involved underwent full discussion and deliberation by the Court. At this term, the counsel for the Appellant moved for a re-argument of the case, alleging as a ground for such motion, that in the examination of the cases cited, we had overlooked an important distinction, which he claims runs through them, and harmonizes them all with one principle, although when considered without observing this distinction, they are in apparent conflict. The point suggested by the counsel is this; that whenever the note or bill has been payable within the State where it is litigated, the courts have assumed to take judicial notice of the condition of the currency, and where it was equal in value to cash, or in other words, at par, they have held paper payable in it to be negotiable, on the ground that the paper currency of the State was equivalent to money. But, on the other hand, where the instrument was payable in the currency of other States, and without the limit of the State where it was litigated, the courts could not take judicial notice of the actual state of the currency, and were obliged to hold the notes non-negotiable. In this position the counsel is correct. The cases generally make this distinction.

Whether the courts are justified in noticing judicially the actual condition of the paper currency of their own State, is to us not so clear as these cases assume it to be. It is true Bank paper has some recognized privileges in the law. A levy upon Bank notes does not necessitate a sale, as in the case of other chattels; they may be treated *civiliter*, as money, for what they are worth. Also, a tender in bank notes is good, unless objected to specifically, for the reason that it is not made in money. Yet notwithstanding these rules

which have grown up and found a place in the common law of the country, through reasons of general convenience, and to facilitate business transactions, it seems impossible that courts can, with any degree of certainty or safety, assume to know the value of the paper currency of their own State. It is notorious that what is passing from hand to hand in one portion of our State, at par, will not pass at all, or at best, at a ruinous discount, in other sections ; and it is also well known that the real value of the paper circulating medium of the country depends almost entirely upon the personal responsibility and integrity of a class of our business men who effectually control it. It may be equivalent to money to-day, and not to-morrow. Perhaps no better illustration of the impropriety of courts assuming knowledge upon this subject, can be given, than a reference to the New York cases upon the subject. In *Keith vs. Jones*, 9 *Johns.*, 120, the court assumes that " York State bills" are the same as cash, and in *Judah vs. Harris*, 19 *Johns.*, 144, it is also assumed that "Bank notes, current in the city of New York," are of cash value throughout the State. In *Thompson vs. Sloan and others*, 23 *Wend.*, 71, Judge Cowen is compelled to admit that the case of *Keith vs. Jones* received a just criticism at the hands of Justice Duncan in the case of *McCormick vs. Trotter*, 10 *Serg. & Rawle*, 94, for placing all New York State bills on a par with money. He says, "I fear we were somewhat justly criticised for the high ground on which we placed all our State bills, in *Keith vs. Jones*. At any rate, Mr. Justice Duncan very truly reminded us that New York State bills had depreciated in common with those of Pennsylvania. A remark which he made as to the note in that case, which was payable in Pennsylvania bills, would, I apprehend, be nearly applicable to our own, at some stages of our currency, viz., that ' it was payable in more than forty kinds of paper, of different value.' We cannot concede the propriety of courts taking judicial notice of any fact depending upon so many fluctuating circumstances as the value of paper currency."

In all the cases we have been able to find, there was something in the bill or note under consideration, which indicated clearly that it was payable in some kind of paper currency,

except the case of *Farwell vs. Kennett*, 7 *Missouri*, 595, which was exactly similar to the case at bar. That was a bill drawn in Illinois, payable in Missouri in " currency." The Court adopts the law as laid down in New York and Massachusetts, on the subject of taking notice of the value of the paper currency of the State, and further assumes that the word " currency" means of necessity something else besides gold and silver coin. The Judge, in delivering the opinion of the Court, says that " experience has taught us that there is a wide difference between the currency contemplated by law and the actual currency ;" and assuming that the currency of that State was below par, he holds the bill not negotiable, and only permits a recovery for the value of the bill in the depreciated currency of the State. The Court did not go the length of taking judicial cognizance of what the actual value of the currency was, but awarded a writ of enquiry to ascertain. If they could notice without proof the one fact, it is hard to see upon what principle they were disqualified from noticing the other.

We consider this case so much at length, because of its similarity to the one at bar, and as we are compelled to disagree with its holdings, we deem it proper to state the reasons why. We think the Court, in that case, indulged two assumptions erroneously. First, That the word currency necessarily meant paper currency ; and, second, that the paper currency of their State was of less value than cash. Under the generally received rule of interpretation, that words used are to be construed most strongly against the promissor, the word currency should be held to mean, in a note or bill, that kind of currency most in accordance with the general tenor of the instrument in which it occurs, and most valuable to the promissee. The instrument is payable to order, and a sum certain is specified in dollars, two circumstances tending to prove that the intention of the parties was to create a negotiable security or promise. The word " currency" means in one, and we think the primary sense, the established, lawful standard medium of exchange, legal tender money, or gold and silver coin. If it has any other meaning in the commercial world, it is a much more restricted and less definite one than the gen-

eral signification adopted by the law lexicographers.   Under all these circumstances we cannot see why the Court should adopt the doubtful term to the overthrow' of the manifest intention of the parties, and reject the one which every rule of construction seems to suggest as most appropriate.   The only possible reason that can be urged in favor of the word currency, in the connection in which it is used in this case, being held to mean paper currency, or anything else but what it naturally imports, is the fact of its being used at all.   The bill was perfect without it, and its insertion is unusual.   While we might infer from these facts that something out of the ordinary course was possibly in the minds of the parties, yet, as the term used in no manner necessarily changes the character of the bill from that of an ordinary negotiable instrument, and admits of a perfect and natural construction in harmony with such paper, which is in all particulars corroborated by the general features of the bill, we can see no reason for interpolating the word " paper " before the word " currency," which is the necessary effect of the case in 7th Missouri, and the argument of the counsel for the Appellant.

Upon very careful research, and mature consideration of the subject, we are satisfied with the disposition we made of the case in the first instance, although we may not have examined the cases cited with the same care we have since done.

The question that would be presented on a re-argument being necessarily involved and discussed in the hearing of the motion for a re-argument, and having been considered by us upon the motion, and held adversely to the Appellant, we deny the motion.