Credito Italiano, Respondent, *v.* Emanuel F. Rosenbaum, Appellant, Impleaded with Another, Defendant. (Action No. 2.)

Credito Italiano, Respondent, *v.* Emanuel F. Rosenbaum, Appellant, Impleaded with Another, Defendant. (Action No. 3.)

In the first above-entitled action: Judgment and orders affirmed, with costs. No opinion. (Townley and Untermyer, JJ., dissent and vote to reverse and deny plaintiff's motion for summary judgment.)

Present — Martin, P. J., Merrell, Townley, Glennon and Untermyer, JJ.; Townley and Untermyer, JJ., dissent.

In the second above-entitled action: Orders and judgment affirmed, with costs. No opinion. (Townley and Untermyer, JJ., dissent and vote to reverse and deny plaintiff's motion for summary judgment.)

Present — Martin, P. J., Merrell, Townley, Glennon and Untermyer, JJ.; Townley and Untermyer, JJ., dissent.

UNTERMYER, J. (dissenting in both actions). These are appeals in two actions by the defendant Rosenbaum from orders in each action denying the defendant's motion for summary judgment dismissing the complaint and granting the plaintiff's motion for summary judgment, and the judgments entered thereon. Both actions involve identical questions and it is conceded that the result in the second action must follow the result in the first.

The first action is upon four promissory notes aggregating 570,000 lire, executed by the defendant George G. Levi and indorsed by his father-in-law, the appellant Rosenbaum. There was also an earlier action between the same parties upon three notes previously due, aggregating 235,000 lire, on which judgment was recovered against the defendant Rosenbaum. I think it is very clear that the former judgment, although recovered upon notes arising out of the same transaction, is not *res adjudicata* in these actions, in which new defenses have been interposed. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304; *Davis* v. *Brown*, 94 U. S. 423.)

It appears to be uncontradicted that Rosenbaum indorsed these notes in New York city in 1931 for the accommodation of his son-in-law, Levi, in order that Levi might use them in Italy in the settlement of an indebtedness to the plaintiff. After Rosenbaum had indorsed the notes, Levi delivered them to the plaintiff in Italy. None of the notes was signed with Levi's full name, but with the name " G. G. Levi." All are payable in lire at the Banca Commerciale Italiana Trust Company in New York city.

Rosenbaum alleges in an affidavit interposed in opposition to the motion that for the purpose of securing his indorsement it was represented by his son-in-law that he was indebted in a specified amount to various creditors and that the proceeds of these notes was sufficient to pay all his outstanding debts in full. This representation is claimed to have been false in that subsequently it developed that Levi had other debts. He further alleges that although not in a position to prove the fact at this time he believes that the plaintiff received the notes with knowledge of the false representations under which the indorsement was secured.

In my opinion there are two issues of fact, neither of which can be decided on conflicting affidavits and either of which requires the denial of the motions made by both parties for summary judgment.

The first question arises on the defendant's contention that the notes, though payable in New York, are Italian notes and that under Italian law they do not constitute negotiable instruments upon which an indorser would be liable because not signed with the full name of the maker. Since it appears to be undisputed that the defendant was an accommodation indorser, who indorsed the notes in New York city for use in Italy, and for that purpose intrusted them to Levi, it is clear that the notes had their inception in Italy when delivered by Levi to the plaintiff. (*Smith* v. *Dixon*, 150 App. Div. 571; *Voigt* v. *Brown*, 42 Hun, 394; *Chapman* v. *Cottrell*, 34 L. J. Ex. 186; Bigelow Bills, Notes and Checks, p. 53.) Consequently, though payable in New York, their validity must be determined in accordance with Italian law. ( *United States* v. *Guaranty Trust Co.*, 293 U. S. 340; *Weissman* v. *Banque De Bruxelles*, 254 N. Y. 488; *Whitehead* v. *Heidenheimer*, 57 App. Div. 590; Goodrich Conflict of Laws, p. 363; 2 Beale Conflict of Laws, p. 1047.) If the notes were not valid in Italy, where liability, if it exists at all, was incurred, they are unenforcible wherever action upon them may be brought.

The question of the validity of these notes, not signed with the maker's full name, under Italian law, presents a question which was formerly an issue of fact for the jury. Since the enactment of section 391 of the Civil Practice Act, any question of foreign law is a question of fact, not of law, to be determined by the trial court, and must be included as a finding of fact or charged to the jury, as the case may be. I do not consider that it is necessary on this appeal to determine which of the two authorities on Italian law who have submitted affidavits has offered the more convincing evidence on the validity of the notes as negotiable instruments in Italy, but only whether there is any substantial issue as to this. That question, as thus limited, is complicated by the fact that the principle of *stare decisis* is not recognized in Italy, with the result that notwithstanding decisions by the court of last resort on the constructions of a statute, the same court or an inferior court is still at liberty to arrive at an opposite conclusion. If we were concerned with the law of a sister State or with the law of England, the question might perhaps safely be decided upon an examination of authorities. (*People* v. *Daiboch*, 265 N. Y. 125.) But this is not true in the case of a nation whose jurisprudence, derived from principles of civil law, is quite foreign to those who have been educated in the traditions of the common law.

In the present case the defendant relies upon subdivision 7 of section 251 of the Italian Commercial Code, which requires as one of " the essential requisites " of a negotiable instrument the " subscription of the drawer or maker with his name and surname." By section 254 it is further provided that " the lack of any of the essential requisites provided in the preceding articles prevents the instrument from having the special effect of a note without prejudice, however, to the ordinary effects of the obligation according to its civil or commercial nature." The affidavit submitted by the defendant's expert on Italian law is to the effect that under these provisions the mere initials of the maker's name is insufficient. In support of that conclusion he refers to many decisions of the Court of Cassation, the court of last resort in Italy, to the effect that a note signed in this manner does not constitute a negotiable instrument and that, if not a negotiable instrument, the defendant would not be liable as an indorser thereon. Even the plaintiff's expert concedes that at one time it was a debatable question whether such a

note was valid, but he maintains that "the question was solved by a statute approved by a Royal Decree, dated December 14th, 1933." That statute provides that "Every signature upon a note shall contain the name and surname or the firm name of the person who binds himself thereby. Nevertheless, the signature thereof is valid in case the name is abbreviated or indicated by the initial solely." It is significant, however, that the statute contains the following reservation: "Bills of exchange and promissory notes issued prior to the enactment of the present law are regulated for all purposes, including stamps, by the previous law, although some of the obligations contained therein were assumed subsequently." It would seem evident that this decree did not affect promissory notes previously executed and that consequently the notes here must be determined by the law of Italy as it existed before December 14, 1933. Since the affidavits disclose a strong probability that such notes were invalid as negotiable instruments before the enactment of the decree, the motion for summary judgment should for that reason alone have been denied.

The plaintiff asserts, however, that a decision by the Court of Appeals of Genoa, apparently a court of intermediate jurisdiction, has, notwithstanding the express provisions of the decree, held it to be retroactive. From the opinion in that case, it would appear that this was one of those courts which even before the enactment of the decree of 1933 had held a note, though not signed with the full name of the maker, to be valid, notwithstanding the many decisions to the contrary by other Italian courts. Accordingly the Genoa court held such a note to be valid because the decree of 1933 in its opinion had not changed the earlier rule but was only "declaratory" thereof. What rule would be applied to such a note executed before December 14, 1933, by a court which had previously held it to be unenforcible cannot be predicted with any degree of certainty.

We have then the irreconcilable opinions of two authorities on Italian law on a question on which the Italian courts appear to be divided. Under these circumstances, the question ought not to be decided by affidavit but by trial. It may be that on a trial the defendant will produce evidence by leaders of the Italian bar to the effect that such a note is unenforcible in Italy. The determination may depend not only on decisions by the Italian courts, which appear to be in hopeless contradiction, but upon the opinions of experts in Italian law whose standing and sincerity cannot be determined on such a motion as this.

The second question, though not raised by the appellant in the court below, must none the less be considered here. (*Persky* v. *Bank of America Nat. Assn.*, 261 N. Y. 212.) It arises from the allegations of the appellant's affidavit that his indorsement was fraudulently secured and requires consideration of the question whether the plaintiff is charged with notice of that fact. Unless the notes are negotiable instruments, the plaintiff would hold them subject to such defenses as the defendant Rosenbaum might have. To be negotiable the instruments must "contain an unconditional promise or order to pay a sum certain *in money*." (Neg. Inst. Law, § 20.) Its negotiable character, however, is not affected by the fact that it "designates a particular kind of *current* money in which payment is to be made." (Neg. Inst. Law, § 25.) I fail to see how it can be held that a note payable in lire in this country is payable in money which is current here. It has been held that a note payable here "in Canada money" is not negotiable because such money is not current in the United States. (*Thompson* v. *Sloan*, 23 Wend. 71.)

That decision was referred to with approval in *Chrysler* v. *Renois* (43 N. Y. 209). The reason for the rule is, of course, that an action upon such a note is really one for damages in which it is necessary to determine the value of the foreign currency. (*Sokoloff* v. *National City Bank*, 250 N. Y. 69, 81.) For that reason I am inclined to the opinion that these notes are not negotiable instruments at all.

But even if they are assumed to be negotiable, the facts alleged in Rosenbaum's affidavit are sufficient to defeat the plaintiff's motions. Section 94 of the Negotiable Instruments Law provides that " the title of a person who negotiates an instrument is defective * * * when he obtains the instrument, or any signature thereto, by fraud." By section 98 of the Negotiable Instruments Law, as well as by the decision in *Canajoharie National Bank* v. *Diefendorf* (123 N. Y. 191), it is settled that " when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as a holder in due course." Since the appellant's affidavit establishes a defect in title within the definition of section 94, the burden is upon the plaintiff to establish that he is a holder in due course and the existence of that burden alone produces an issue of fact sufficient to defeat a motion for summary judgment. (*Karpas* v. *Bandler*, 218 App. Div. 418.)

The orders granting the plaintiff's motions for summary judgment and the judgments entered thereon should be reversed and the motions denied. The orders denying the defendant appellant's motions for summary judgment dismissing the complaints should be affirmed.

Townley, J., concurs.